Betty B. ZARETSKY and Morton Zaretsky, Plaintiffs,

v.

E. F. HUTTON & COMPANY, INC., Avest, Inc., and Tom Hanlon, Defendants.

No. 79 Civ. 1250.

United States District Court, S. D. New York.

Jan. 23, 1981.

Stuart C. Goldberg, New York City, for plaintiffs.

Cahill, Gordon & Reindel by Thomas F. Curnin, Donald S. Parker, New York City, for defendant E. F. Hutton & Co., Inc.

J. Kenneth Thompson, New York City, for defendant Tom Hanlon.

Howard I. Rhine, Kramer, Coleman & Rhine, New York City, for defendant Advest, Inc.

MEMORANDUM OPINION AND ORDER

LOWE, District Judge.

This is an action based on the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78a *et seq.*,[1] in which plaintiffs

---

1. Plaintiffs allege that jurisdiction is based on § 27 of the Exchange Act, 15 U.S.C. § 78aa, which in relevant part:

The district courts of the United States ... shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder.... Any suit or action to enforce any liability or duty created by this chapter or rules and regulations

seek damages based on the following claims of wrongdoing: (1) excessive trading ("churning");[2] (2) unsuitable recommendations as to the purchase and sale of stock;[3] (3) fraudulent misrepresentations and omissions in the opening of a margin account and options account;[4] and (4) common law fraud.[5] Defendant E. F. Hutton & Company, Inc. ("Hutton") has moved, pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing the complaint for lack of particularity in pleading fraud and for failure to state a claim for which relief may be granted, respectively. For the reasons set forth below, defendant Hutton's motion is denied in part and granted in part. Plaintiffs' request for an award of costs and attorney's fees connected with the motion is denied.

### Background Facts

Plaintiffs Betty Zaretsky and Morton Zaretsky ("the Zaretskys") allege that on or about February 14, 1977, they opened a brokerage account with defendant Hutton and that they engaged in various purchases and sales of securities through defendant Tom Hanlon ("Hanlon"), a registered representative employed by Hutton as an Account Executive.[6] They claim that at the time the account was opened, they informed defendant Hanlon "that they were placing their entire life's savings of some $25,000 into his care for the purpose of conservative investment and to generate some extra income to augment their social security allowance" upon their retirement.[7] On or about May 12, 1978, plaintiffs shifted their account from Hutton to defendant Advest Inc. ("Advest") in order to follow the registered representative, Hanlon, who had changed employment from Hutton to Advest.[8] There they made various purchases and sales of securities, through defendant Hanlon, until November 1978.

Count 1 of their complaint alleges that Hanlon engaged in 147 separate purchases and sales from February 1977 to November 1978.[9] Plaintiffs claim that all of those transactions were initiated and recommended by Hanlon, "who exercised effective control over the account;"[10] that the transactions were "excessive in size and frequency in light of the character" of the account;[11] and that they constituted the fraudulent practice of churning proscribed under § 10(b) and Rule 10b–5.

Plaintiffs further maintain in count 1 that the brokerage firms, Hutton and Advest, are liable to them as controlling persons under § 20 of the Exchange Act, 15

thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any [district wherein any act or transaction constituting the violation occurred] or in the district wherein the defendant is found or is an inhabitant or transacts business . . . .

2. Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b); S.E.C. Rule 10b–5, 17 C.F.R. § 240.-10b–5 and Rule 15c, 17 C.F.R. § 240.cl–7. Churning describes the practice of trading a ιclient's securities with the purpose of generating broker commissions.

3. New York Stock Exchange Rule 405, promulgated pursuant to § 6(b)(5) of the Exchange Act, 15 U.S.C. § 78f(b)(5); National Association of Securities Dealers' Rules of Fair Practice, Art. III, § 2, promulgated pursuant to the Exchange Act, § 15A(b)(6), 15 U.S.C. § 78o –3(b)(6).

4. Exchange Act, § 10(b), 15 U.S.C. § 78j(b); S.E.C. Rule 10b–5, 17 C.F.R. § 240.10b–5.

5. The claim of common law fraud—a state claim—is brought under the Court's pendant jurisdiction.

6. Complaint, ¶ 5–6.

7. *Id.*, ¶ 6.

8. *Id.*, ¶ 7; Plaintiffs' Memorandum of Law at 4. Hutton and Advest are not affiliated. Affidavit of Fisch, ¶ 3.

9. Complaint, ¶ 9–10. Two thirds took place while the account was at Hutton. The other third took place after Hanlon went to Advest. According to plaintiffs, not one of the transactions received prior authorization from them. Plaintiffs' Memorandum of Law at 2.

10. Complaint, ¶ 11; Plaintiffs' Memorandum of Law at 2.

11. Complaint, ¶ 12.

U.S.C. § 77o;[12] that Hutton and Advest "had a duty to exercise due diligence" and that they "wilfully, intentionally and in callous and reckless disregard of its [sic] fiduciary duty to its [sic] customers, and in violation of the rules of the New York Stock Exchange and the National Association of Securities Dealers failed to supervise plaintiffs' account and the transactions therein;"[13] and that Hutton and Advest knew or should have known that fraudulent activity was taking place with respect to plaintiffs' account but failed to institute appropriate supervisory procedures and internal controls, thereby participating in the fraud.[14]

In count 2 of the complaint, plaintiffs claim that defendant Hanlon made unsuitable recommendations to plaintiffs in the purchase and sale of securities; that he "failed to make reasonable inquiry concerning plaintiffs' investment objectives, financial situation and needs;"[15] that defendants Hutton and Advest, jointly and in concert, "intentionally and wilfully induced unsuitable purchases and sales of options in plaintiffs' account;"[16] and that Hutton and Advest wilfully and intentionally failed to supervise plaintiffs' account in violation of the Rules of Fair Practice of the National Association of Securities Dealers and the rules of the New York Stock Exchange.[17]

Count 3 of the complaint[18] alleges that defendant Hanlon made untrue statements of material fact as to the opening of a margin account and as to the purchase and sale of options, while omitting material facts necessary, in light of the circumstances in which they were made, to make the statements made not misleading.[19] It is claimed that Hutton and Advest, jointly and in concert, "induced margin and option transactions through the use of untrue statements of material fact" and wilfully and intentionally failed to supervise plaintiffs' account in violation of § 10(b) and Rule 10b–5 of the Exchange Act.[20]

Count 4 reasserts the churning allegations contained in counts 1, 2, and 3 as a claim for common law fraud on the part of each defendant and for breach of fiduciary duty by defendants Hutton and Advest.

On each count plaintiffs ask damages of $24,664.24 for commissions, fees, taxes and margin interest paid to defendants.[21] They also seek punitive damages of $1,000,000 on the common law fraud claim.

Defendant Hutton has moved for:

(1) dismissal of counts 1–3 on the grounds that said counts do not allege actual damages as required by § 28(a) of the Exchange Act, 15 U.S.C. § 78bb;

(2) dismissal of counts 1–4 on the grounds that said counts fail to allege fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure;

(3) dismissal of the claim for punitive damages for failure to state a claim for which this Court can grant relief; and

(4) dismissal of count 4 alleging common law fraud on the grounds that the Court lacks jurisdiction over the subject matter.

---

12. *Id.*, ¶ 5. Section 77o states in part: "Every person who . . . controls any person liable under Section 77k or 77l of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . ."

13. Complaint, ¶ 13.

14. *Id.*, ¶ 14.

15. *Id.*, ¶ 17.

16. *Id.*, ¶ 20.

17. *Id.*, ¶ 21.

18. Plaintiffs' complaint has two counts labelled "four" and none labelled "three". Thus, for purposes of this motion, the Court will treat the first of the counts labelled "four" as count "three".

19. Complaint, ¶ 24–28.

20. *Id.*, ¶ 29–30.

21. *Id.*, ¶¶ 15, 23, 31, and 36. Of the $24,664.24 damages claimed, $15,715.18 allegedly was incurred for commissions and other brokerage charges at Hutton. The remainder, $8,949.06, was allegedly incurred for similar charges at Advest. Plaintiffs' Memorandum of Law at 3.

## DISCUSSION OF LAW

### (1)

### *Failure to State a Claim*

Since the Court has before it matters outside the pleadings, the motion to dismiss for failure to state a claim must be treated as one for summary judgment pursuant to Rules 12(b) and 56 of the Federal Rules of Civil Procedure.[22] See *Carter v. Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972); *Keating v. BBDO International, Inc.,* 438 F.Supp. 676, 679–80 (S.D.N.Y.1977).

■ Under Rule 56, the court does not sit as a trier of fact, but, based on the pleadings, exhibits and affidavits before it, determines whether there are genuine issues of material fact alleged. *See FLLI Moretti Cereali v. Continental Grain Co.,* 563 F.2d 563, 566 (2d Cir. 1977), *citing United States v. Bosurgi,* 530 F.2d 1105 (2d Cir. 1976). Hutton, the moving party, must present evidence that establishes the absence of factual matters in dispute. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317, 1320 (2d Cir. 1975). If the evidence presented by the parties is subject to conflicting interpretations, or reasonable people might differ as to its significance or weight, summary judgment is improper. *See Robertson v. Seidman & Seidman,* 609 F.2d 583, 591 (2d Cir. 1979); *Doe v. United States Civil Service Commission,* 483 F.Supp. 539, 555 (S.D. N.Y.1980).

Hutton contends that the counts alleging security law violations should be dismissed because plaintiffs do not allege "actual damages" as required by § 28 of the Exchange Act. In support of this contention, defendant Hutton points out that plaintiffs' account showed a net profit of $11,755.10 before it was transferred to Advest in May, 1978.[23]

■ The measure of damages proposed by defendant—net loss or gain in value of the portfolio at the time it left Hutton's control—does not reflect the claims asserted by plaintiffs. First, the proper measure of damages under the count for churning is not the change in market value of a portfolio but the amount of commissions, fees, interest and taxes paid to defendant because of illegal activity.[24] The restitution measure of damages is utilized in churning cases where it is impossible to know what securities would have been in the account but for defendant's fraud. *See Carras v. Burns,* 516 F.2d 251, 259 (4th Cir. 1975); *Kravitz v. Pressman, Frohlich & Frost, Inc.,* 447 F.Supp. 203, 216 (D.Mass.1978).

■ Under count 2 of the complaint dealing with investment in unsuitable securities, there is a disputed issue of causation that cannot be resolved by summary judgment. Although at the time the portfolio left defendant's control it showed a net gain, plaintiffs allege that the misconduct of Hutton proximately caused the subsequent depreciation of the account from May to November, 1978.[25] Their theory is that if Hanlon, while he was a Hutton agent, had purchased suitable high quality bonds, as he allegedly should have done in light of the nature and purpose of the account, they

---

**22.** Rule 12(b) states:

If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, ...

Rule 56 provides:

The judgment sought shall be rendered forthwith if the pleadings ... together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

**23.** Affidavit of Fisch, ¶ 6.

**24.** *See Carras v. Burns,* 516 F.2d 251, 259 (4th Cir. 1975); *Hecht v. Harris, Upham & Co.,* 430 F.2d 1202, 1211 (9th Cir. 1970); *Kravitz v. Pressman, Frohlich & Frost, Inc.,* 447 F.Supp. 203, 216 (D.Mass.1978).

**25.** Plaintiffs' Memorandum of Law at 20–21.

would not have suffered the subsequent loss in equity.[26]

If plaintiffs are correct, Hutton is liable to them because they suffered actual damage. That disputed, material issue of fact precludes summary judgment for Hutton at this time.

### (2)

### *Failure to Plead with Particularity*

■ Rule 9(b) of the Federal Rules of Civil Procedure requires:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

That rule governs the pleading of securities fraud claims in a complaint under the Exchange Act as well as those under the common law.[27] *See Ross v. A.H. Robins Co.*, 607 F.2d 545, 557 (2d Cir. 1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); *Denny v. Barber*, 576 F.2d 465, 468 (2d Cir. 1978); *Stromfeld v. Great Atlantic & Pac. Tea Co., Inc.*, 484 F.Supp. 1264, 1269–70 (S.D.N.Y.1980).

Defendant Hutton alleges that plaintiffs' complaint is deficient insofar as it does not plead with particularity: (a) control of plaintiffs' account by Hanlon; (b) scienter; and (c) the respective actions of each defendant. Defendant Hutton does not separate its remarks as to each count of the complaint. However, since plaintiffs are proceeding against Hutton exclusively on theories of fraud, each of their causes of action must individually meet the requirements of Rule 9(b) and are considered separately below.

### (a)

### Count 1 (churning)

■ The elements that must be proved to make out a claim for churning are: (1) that the broker dealer or his agent engaged in excessive trading in light of the character of the account; and (2) that the broker effectively exercised control over the account. 17 C.F.R. 240.15cl–7(a). *See Newburger, Loeb & Co., Inc. v. Gross*, 563 F.2d 1057 (2d Cir. 1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978); *Establissement Tomis v. Shearson Hayden Stone, Inc.*, CCH Fed.Sec.L.Rep. ¶ 97,265 (S.D.N.Y.1980); *Faturik v. Woodmere Securities, Inc.*, 442 F.Supp. 943, 945 (S.D.N.Y.1977). Factors relevant to the element of control include the discretion given the broker-dealer, the age, education, intelligence, and business and investor experience of the client, the relationship between client and broker, and the reliance placed by the customer on his broker. *See, e. g., Newburger, Loeb & Co., supra* at 1070; *Kravitz, supra* at 211.

In the instant complaint, plaintiffs allege:

All of the aforesetforth securities trading activity was based upon the initiation and recommendation of defendant HANLON who exercised effective control over the account.[28]

In support of that allegation, they maintain that, when they opened the Hutton account, they "informed defendant Hanlon that they were placing their entire life's savings of some $25,000 into his care for the purpose of conservative investment and to generate some extra income . . . ." (Complaint, ¶ 6). They also maintain that Hanlon promised that they would "make good money on options;" that he would make money for them; and that he was "the best in the business." (Complaint, ¶ 27)

■ Defendant's objection that the complaint fails to allege the *manner* in which Hanlon exercised control of the account is not persuasive. It is sufficient in

---

**26.** Affidavit of Goldberg, ¶ 6.

**27.** Particularity of pleading is required in order to give adequate notice and information to the defendant to enable him to prepare responsive papers, *see* Wright & Miller, *Federal Practice and Procedure*: Civil § 1298 at 415 (1969), and to protect defendants from the harm to reputation resulting from spurious claims. *See Ross v. A.H. Robins Co.*, 607 F.2d 545, 557 (2d Cir. 1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); *Denny v. Barber*, 576 F.2d 465, 470 (2d Cir. 1978).

**28.** Complaint, ¶ 11.

this case that Hutton has received notice of the particular account in issue, the relevant time period, the specific securities transactions, and the identity of the Hutton representative allegedly in control of the account. Rule 9(b) does not require that plaintiffs state in their complaint the evidence they will introduce to prove the element of control.

■ The Court rejects defendant's other 9(b) objections to this count of the complaint. First, scienter has been adequately pleaded. *See* Complaint, ¶¶ 12, 13, 14, 33, 34, and 35. Rule 9(b) does not require the same specificity of pleading with respect to intent or knowledge as to other elements. Instead, those facts may be averred generally. In an action under the Exchange Act, it is sufficient to allege actual knowledge of fraudulent acts, *see, e. g., Gross v. Diversified Mortgage Investors*, 431 F.Supp. 1080, 1088 (S.D.N.Y.1977), or that defendant acted in reckless disregard for its duty to plaintiffs "to the extent that the danger was either known ... or so obvious that the defendant must have been aware of it." *Rolf v. Blyth Eastman, Dillon & Co., Inc.*, 570 F.2d 38, 47 (2d Cir. 1978), *appeal after remand*, 637 F.2d 77, 81 (2d Cir. 1980) ("*Rolf III*"). *See Troyer v. Kargagi*, 476 F.Supp. 1142, 1151 (S.D.N.Y.1979). Plaintiffs have satisfied that requirement for the purposes of Rule 9(b).

■ Second, from the face of the complaint defendant Hutton has sufficient notice of the acts for which plaintiffs claim it bears responsibility.[29] Plainly they are charged with reckless and wilfull failure to exercise due diligence, or to supervise the

---

**29.** Although the Court would agree that any charges of conspiracy to defraud, as to Hutton and Advest, have not been pleaded with the requisite degree of particularity, *see Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir. 1972); *Troyer v. Karcagi*, 476 F.Supp. 1142, 1153 (S.D.N.Y. 1979), plaintiffs have essentially abandoned that theory. *See* Defendants' Supplemental Memorandum of Law at 5; Affidavit of Zaretskys, ¶ 11.

**30.** Defendant's lengthy arguments denying the validity of plaintiffs' theory of Hutton's liability for their economic loss are not properly ad-

Zaretsky account, or to control the actions of defendant Hanlon while he was in its employ. (Complaint, ¶¶ 12, 13, 14) That period of time commenced on or about February 14, 1977 and ended on or about May 12, 1978 when the account was shifted to Advest.[30] (Complaint, ¶¶ 6, 7)

(b)

### Count 2 (suitability)

■ In unsuitability cases, the scienter showing required under Rule 10b–5 is that defendant believed the securities traded were unsuitable in light of the nature of the investment objectives and needs of the clients, and that defendant nevertheless traded in those securities. *See Clark, supra* at 600; *Troyer, supra* at 1152.

Plaintiffs' allegations under the suitability count as to scienter and the acts of the respective defendants are similar to those under count 1. Paragraph 6 states:

[P]laintiffs informed defendant Hanlon that they were placing their entire life's savings of some $25,000 into his care for the purpose of conservative investment and to generate some extra income to augment their social security allowance when going into retirement.

Paragraph 20 alleges that Hutton and Hanlon,

contrary to the best interest of plaintiff and for their own gain, intentionally and wilfully induced purchases and sales of options in plaintiffs' account which were unsuitable in light of the character of

---

vanced in a Rule 9(b) motion. As the Court observed in *Todd v. Oppenheimer & Co.*, 78 F.R.D. 415, CCH Fed.Sec.L.Rep. § 96, 727 at 94, 870 (S.D.N.Y.1978):

If the omissions [of material fact] are ... charged against both defendants, it is a legal issue whether such a duty [to disclose information] existed in either or both such defendants. It is not a problem of factual specificity and therefore Rule 9(b) is satisfied.

Defendant may attack the substance of plaintiffs' claim under the standards of *Rolf III* at the appropriate time.

such account. (Specifically: 33 transactions set forth [ante].)

Paragraph 22 claims that Hutton

failed to institute appropriate procedures and internal controls to apprise itself of the fraudulent activities of defendant Hanlon or to otherwise exercise the proper supervision with respect to its customers' account . . . thereby participat[ing] in the fraud perpetrated by its employee defendant Hanlon . . . .

■ Relying on the analysis set forth *supra*, p. 17, the Court finds that the allegations satisfy the 9(b) pleading requirement under the Exchange Act with respect to defendant's intent to defraud. *See generally, Mihara v. Dean Witter & Co., Inc.*, 619 F.2d 814 (9th Cir. 1980) (action for churning and dealing in unsuitable securities); *Clark, supra* (action for fraudulent misrepresentations and dealing in unsuitable securities). The Court's conclusion, *supra* p. 17, that Hutton has specific notice of the acts and omissions charged against it under count 1, applies as well to this second count.[31]

### (c)

### Count 3 (misstatements and omissions)

■ The Rule 9(b) requirement to plead with particularity is met if plaintiffs allege generally that defendant possessed the requisite intent under Rule 10b–5 of the Exchange Act. That standard of intent, outlined *supra*, p. 17, is either actual, wilful intent to deceive by uttering false statements or by omitting to disclose material information, or reckless disregard for the truth or falsity of the statements or omissions allegedly made.

■ Count 3 incorporates all prior relevant allegations and further alleges in paragraph 25 specific statements that Hanlon made to plaintiffs, which are alleged to be untrue. In paragraph 26, the complaint identifies information which Hanlon omit-

ted to state to plaintiffs, thereby misleading them, such as the alleged fact that margin accounts contain a certain degree of risk. In paragraph 27, plaintiffs claim that Hanlon made untrue statements of material fact in connection with his recommendations of options transactions. *See also* paragraph 29. Further, in paragraph 30, plaintiffs charge that Hutton

wilfully, intentionally and in callous disregard of its fiduciary duty to its customers failed to supervise plaintiffs' account and the transactions therein.

These allegations of "wilfulness" and "intent", and other averments as to defendant's state of mind, satisfy the federal pleading rules. The details of transactions during the relevant time period, the allegation of control under § 20(a), and the asserted facts concerning the period of time during which Hanlon's alleged omissions and misrepresentations are charged against Hutton also fulfill the requirements under Rule 9(b). Therefore, the motion to dismiss count 3 has no merit.

### (d)

### Count 4 (common law fraud)

■ Defendant maintains that the complaint does not properly allege an action for common law fraud with respect to exemplary damages. It argues that the only basis for holding Hutton liable for Hanlon's acts is that Hutton is a "controlling person" as to Hanlon. Defendant's Memorandum of Law at 22. Hutton assumes that "a claim of liability as a 'controlling person' is cognizable only as a violation of § 20 of the Exchange Act, 15 U.S.C. § 78 . . . ." *Id.* Since punitive damages cannot be recovered under the Exchange Act, it concludes that there is no basis for plaintiffs' count 4 claims for punitive relief.

That argument is frivolous. Plaintiffs do not rely on § 20 in their common law count

---

**31.** The "control" element of churning is not relevant to a charge that Hutton, through Hanlon, dealt in unsuitable securities for the account. Plaintiffs' theory that Hutton is liable for Hanlon's dealings either as respondeat superior or under § 20 is sufficiently pleaded in

paragraph 5 of the Complaint, which states that Hanlon was Hutton's registered representative broker. *See, e. g., SEC v. Geon Industries, Inc.*, 531 F.2d 39 (2d Cir. 1976); *Hect v. Harris, Upham & Co.*, 430 F.2d 1202, 1210 (2d Cir. 1970).

but base liability on the doctrine of respondeat superior. *See* Complaint, ¶ 34–35; Plaintiffs' Memorandum of Law at 25. Unquestionably, alternative theories of liability may be asserted in a complaint. Fed.R. Civ.P. 8(a). It also has been held that respondeat superior liability under state law coexists with "controlling person" liability under federal security law.[32] *See, e. g., Fey v. Walston & Co., Inc.*, 493 F.2d 1036, 1052 (7th Cir. 1974). *Cf. SEC v. Geon Industries, Inc.*, 531 F.2d 39, 54–56 (2d Cir. 1976). Therefore, plaintiffs' claims for punitive damages are not barred by federal law.

### (3)
### *Punitive Damages*

Defendant Hutton lastly argues that plaintiffs have not pleaded sufficient facts to establish a claim for punitive damages under New York common law. It asserts that, in New York, punitive damages may not be recovered unless defendant has engaged in acts that are "morally culpable", motivated by evil intent, or "aimed at the public generally", Defendant's Memorandum of Law at 23. Hutton correctly notes that the catch words, "evil", "morally culpable", "malice", and "reprehensible motive", do not appear in the complaint. Instead, plaintiffs charge that Hutton, "contrary to the best interests of plaintiffs and for their own gain, intentionally and wilfully induced purchases and sales of securities and options in plaintiffs' account which were excessive ... in the light of the character of such account." (Complaint, ¶ 33) Also, they allege that Hutton "intentionally and in callous disregard of its fiduciary duty to its customers, failed to supervise plaintiffs' account and the transactions therein." (Id., ¶ 34).

Those allegations do not meet the standard adopted by the New York Court of Appeals to assess claims for exemplary damages. The test is whether there is "such gross, wanton, or willful fraud or other morally culpable conduct to a degree sufficient to justify [such] an award." *Borkowski v. Borkowski*, 39 N.Y.2d 982, 387 N.Y.S.2d 233, 355 N.E.2d 287 (1976). *See Greenspan v. Commercial Ins. Co. of Newark, N. J.*, 57 App.Div.2d 387, 395 N.Y.S.2d 519 (3rd Dep't 1977) (defrauding seriously ill patient of his insurance benefits).

Mere allegations of fraud do not give rise to a cause of action for punitive damages [citation]; nor are punitive damages available for mere breach of contract . ... [citation]. Even where the allegations sound directly in fraud, punitive damages depend upon proof of defendant's moral culpability for gross conduct *Chase Manhattan Bank N.A. v. Perla*, 65 A.D.2d 207, 411 N.Y.S. 66. Nothing in plaintiff's complaint or brief remotely suggests morally culpable conduct of the defendants or criminal indifference to civil obligations.

*Janina Travel Bureau, Inc. v. Kalison*, 72 App.Div.2d 916, 422 N.Y.S.2d 322, 323 (4th Dep't 1979). The alleged misconduct of defendant Hutton does not approach the degree of culpability necessary to support a claim for exemplary damages under New York law. The claim for punitive damages is accordingly dismissed.[33]

### (4)
### *Costs*

Plaintiffs request costs, disbursements and full attorney's fees against defendant on the ground that Hutton's motion was made "for the improper purpose of generating excessive paper work, harassing plaintiffs, and wasting time." Plaintiffs' Memorandum of Law at 28. The Court's rulings

**32.** Indeed, even in actions under the Exchange Act, plaintiffs may proceed under traditional agency principles against a brokerage house *or* under the "controlling person" provision in § 20(a). *See Marbury Management, Inc. v. Kohn*, 629 F.2d 705, 716 (2d Cir. 1980) ("there is no warrant for believing that Section 20(a) was intended to narrow the remedies of the customers of brokerage houses").

**33.** Defendant's final claim that the Court lacks jurisdiction over the pendant state claims is mooted by the Court's denial in part of Hutton's motion to dismiss all of the federal causes of action.

on defendant's motion necessarily dispose of that request.

### CONCLUSION

Defendant's motion to dismiss counts 1–3 for failure to allege actual damages as required by the Exchange Act is denied.

The motion to dismiss counts 1–4 for failure to plead fraud with particularity is denied.

The motion to dismiss the claim for punitive damages under New York common law is granted, without prejudice.

Plaintiffs' request for costs and attorney's fees is denied.

It Is So Ordered.