William T. CRUSE, Plaintiff,

v.

EQUITABLE SECURITIES OF NEW YORK, INC. and Steven A. Fishman, Defendants.

No. 86 Civ. 6700 (MJL).

United States District Court, S.D. New York.

June 22, 1987.

Kaufmann, Caffey, Gildin, Rosenblaum & Schaeffer, P.C. by David E. Robbins, David J. Kaufmann, New York City, for plaintiff.

Ormsten & Evangelist by Franklin D. Ormsten, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

LOWE, District Judge.

### The Complaint

William T. Cruse ("Cruse") commenced this action against Equitable Securities of New York, Inc. and Steven A. Fishman ("defendants") to seek the recovery of damages for alleged violation of the federal securities laws (Claim I), 15 U.S.C. § 78j(b) and Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated thereunder; violations of the Racketeer Influenced and Corrput Organization Act ("RICO"), (Claim II), 18 U.S.C. Sections 1962(c), 1961(1) and (5); violations of common law fraud and fiduciary duty (Claim III); and violations of Article 23–A of the General Business Law of the State of New York (N.Y. "Blue Sky" Law) (Claim IV).

Defendants have moved for an Order dismissing the complaint pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, for failure to allege fraud with the requisite particularity, and Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

In essence, Cruse alleges that he told Fishman that because Cruse was dependent upon dividend income from his portfolio, no stock given as collateral for a proposed options trading strategy was to be liquidated under any circumstances. Cruse also claims that Fishman was fully aware of Cruse's conservative investment objective and lack of any experience in or understanding of options. Plaintiff further alleges that his account at Equitable Securities was a non-discretionary account. More specifically, he alleges that no one other than Cruse was ever authorized to purchase or sell securities for the account.

On September 30, 1985, Cruse claims that pursuant to Fishman's trading strategy, he deposited as collateral into the Equitable account ("the account") securities with a value of approximately $160,000. This collateral was comprised of 2,968 shares of Kerr McGee Corporation and 1,200 shares of Pepsico, Inc.

Plaintiff claims that from the date he deposited the aforementioned collateral in the account through mid-March 1986, Fishman engaged in unauthorized and unsuitable trading.

In regard to the period in question, October 1985 through March 1986, it is alleged that defendant Fishman's trading resulted in a net loss to plaintiff of over $260,000. This figure is alleged to include commissions of over $16,000. Cruse claims that this figure stems from a turnover ratio [1] of 16, a rate Cruse alleges is excessive in light of his conservative investment objectives.

Defendants allege: (1) that pursuant to F.R.C.P. 9(b), plaintiff's allegations of securities fraud have not been pled with the requisite particularity; (2) that the fraud alleged was not in connection with the purchase or sale of a security; (3) that plaintiff has not alleged any affirmative misrepresentations or deception in regard to his claim of unauthorized trading; (4) plaintiff has failed to adequately plead churning of his account; (5) that plaintiff has failed to plead unsuitability with specificity [Rule 8(b)]; and (6) that plaintiff has failed to adequately allege RICO violations against either his broker or Equitable Securities.

### Background

Cruse alleges that defendant Fishman was at all relevant times an employee and registered representative of defendant Equitable Securities, and conducted business from Equitable Securities' office at 55 Waterside Plaza, New York, New York. Cruse further alleges that at commencement of the activities complained of, Fishman was 22 years old, and unknown to Cruse, he had been a registered representative for only 2 months.

Cruse claims to be an 82 year old successful business man whose sole investment experience prior to opening his securities account with defendant was the purchase of "blue-chip" stocks on a cash basis and the derivation of dividend income

---

1. Securities industry procedure used to determine the frequency of trading.

therefrom. Prior to the opening of an account with defendants, Cruse claims never to have traded or to have had an understanding of options.

Cruse claims to have first met Fishman in 1984 at social events sponsored by a common college fraternal organization. In September 1985, defendant Fishman is alleged to have told Cruse that despite his inexperience with options and conservative investment objectives, a substantial return could be made trading index options; that through index options trading, a 10–15% return above the dividends now received from Cruse's common stock portfolio could be reasonably expected; while Cruse would have to put up a portion of his common stock portfolio as collateral, such stock would never be liquidated; that no trade would be made without first consulting plaintiff Cruse; Fishman would at all times monitor trading to prevent losses; that the options strategy to be pursued was a conservative one with a limited risk of approximately 10% of the amount invested; that this trading strategy was one Fishman was using with success for his own immediate family; and finally, that although Cruse would be getting trading confirmations and monthly statements, they would be difficult to understand and that for this reason, Fishman would subsequently explain their meaning and impact to plaintiff Cruse.

Cruse claims that on the same day that he first transferred collateral into the account, Fishman engaged in an unauthorized and unsuitable transaction by selling 29 call options on Cruse's Kerr McGee stock and 12 call options on his Pepsico stock. Cruse claims that all of his Pepsico stock was eventually sold without his receipt of the benefits of such sale.

Plaintiff further claims that Fishman's assurance that he would monitor trading to prevent losses proved to be untrue as plaintiff lost $63,000 in November 1985, $117,-000 in December 1985, $16,500 in January 1986, $45,000 in February 1986, and $22,-000 in March 1986.[2] Cruse claims that at no time during the period in question did Fishman advise him of the true extent of his losses, despite the fact that Fishman knew that Cruse did not understand the monthly account statements issued.

Cruse alleges that he received margin maintenance notices on his account prior to December 20, 1985, and that on each occasion Fishman told him that the notice had been sent in error. Cruse further claims that from late December 1985, through mid-March 1986, Fishman represented to Cruse that earlier, temporary losses were now profits, and that additional profits had been made, and that these profits should be reinvested. Because Cruse alleges that he could not understand the monthly account statements issued, he claims that he believed Fishman's assertions.

In mid-March 1986, plaintiff Cruse claims that he received approximately 17 trading confirmations for trades he had never authorized. Cruse claims he subsequently tried to contact Fishman and learned that he had left for vacation in Jamaica. Cruse alleges that he then had a meeting with the branch manager of defendant Equitable Securities, at which an officer of the company admitted to Cruse that Equitable had been concerned about plaintiff's account but had not contacted Cruse because defendant Fishman had told them that Cruse was a man of "vast wealth" and that his account represented his "risk portfolio".

As a result of the alleged meeting with officers of defendant Equitable Securities, Cruse claims that his account was transferred to Edward Swikart, III ("Swikart"), who is believed to be the branch manager of Equitable Securities. Cruse alleges that after Swikart performed his own analysis of the trading activity in Cruse's account, he offered to personally guarantee the return of all losses over an unspecified period of time, if Cruse agreed to liquidate securities being held as collateral and allowed Swikart to trade the account on a discretionary basis. Cruse claims that when this was rejected as being contrary to the rules of Fair Practice of the National Association of Securities Dealers, Inc. ("N.A.S.D."), Swikart offered a gift of restricted stock in

2. Figures are approximations.

an over-the-counter market company. Cruse alleges that this offer was also rejected.

*Claim One: The Rule 10b–5 Allegations*

Plaintiff Cruse first alleges violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated thereunder. Cruse's securities claims are founded upon allegations of fraudulent misrepresentation, unauthorized trading, churning and unsuitable trading.

## A. *Fraudulent Misrepresentation*

It must first be noted that Section 10(b) has been interpreted as positing liability only when a plaintiff can show that an alleged fraud was in connection with the purchase or sale of a security. Cruse's claim of fraudulent misrepresentation arises from representations allegedly made by defendant Fishman as inducements in order to get plaintiff to initially open an account with defendant Equitable Securities. The Complaint at paragraphs 18–33. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). Cruse correctly notes that courts have stated that the "in connection with the purchase or sale of any security" language in Section 10(b) should be read with flexibility. *Superintendent of Insurance v. Bankers Life Casualty Co.,* 404 U.S. 6, 12, 92 S.Ct. 165, 169, 30 L.Ed.2d 128 (1971). In fact, both the Securities Act of 1933[3] and the Securities Exchange Act of 1934[4] define the term security as including an "investment contract," not just specific securities which are later purchased or sold. However, the allegations which comprise Cruse's claim of fraudulent misrepresentation exceed even the broad parameters of the "in connection with" requirement of Section 10(b); and thus, this claim cannot serve as a basis for a Rule 10b–5 violation.

▅▅▅▅ Statements made by a broker in order to persuade a potential customer to open up an account may satisfy the "in connection with" requirement of Section 10(b) only if the statements precede the establishment of an "investment contract," which pursuant to the definitional section of the Exchange Act,[5] is considered to be a "security". Whether a particular agreement entered into between a broker and a customer may be labeled an "investment contract," and therefore, a "security," requires the application of a test first enunciated in *SEC v. W.J. Howey Co.,* 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed.2d 1244 (1946). The *Howey* factor, dispositive of plaintiff Cruse's fraudulent misrepresentation claim, mandates a discretionary account or an arrangement whereby profits come solely from the efforts of others. Cruse's complaint alleges that Cruse agreed to open an account on a non-discretionary basis only. Complaint at paragraphs 21(D), 29(B) and 32. In other words, no one but Cruse would be authorized to purchase or sell securities. Thus, it follows that under the *Howey* test, the alleged misrepresentations made by defendant Fishman prior to the opening of the account at issue were not made "in connection with the purchase or sale of any security," as is required by Section 10(b) of the Securities Exchange Act of 1934. *See also, Dubin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* Fed.Sec.L.Rep. (CCH) ¶ 99, 144 (S.D.N.Y.1983) (Lowe, J.) [Available on WESTLAW, 1983 WL 1292].

Plaintiff Cruse relies on the recent decision of *Levine v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* Fed.Sec.L.Rep. (CCH) ¶ 92, 841 (S.D.N.Y. July 26, 1986) (Conner, J.), for the claim that the alleged misrepresentations were in connection with the purchase or sale of a security. In *Levine,* however, Judge Conner held that the misrepresentations at issue were deemed to have been made "in connection with the purchase or sale of a security" because the option account later opened was a discretionary one. Therefore, the account was considered an "investment contract," and for the purposes of Section

---

**3.** 15 U.S.C. § 77b(1) (1981).

**4.** 15 U.S.C. § 78c(a)(10) (1981).

**5.** Id.

10(b), a security. *Levine,* Fed.Sec.L.Rep. (CCM) 9192.841 at 94.090. Accordingly, Cruse's claim of fraudulent misrepresentation cannot serve as a basis for a Rule 10b–5 violation and must be dismissed.

## B. *Unauthorized Trading*

Plaintiff Cruse further alleges in Claim I of the Complaint that Fishman engaged in unauthorized trading by making purchases and sales of securities for the account without first obtaining Cruse's authority. Complaint at paragraphs 34–37, 47, 51, 62 and 65. Defendants urge dismissal of this claim contending that Cruse has not alleged any affirmative misrepresentations or deception [6] and that unauthorized trades disclosed in regular account documentation cannot give rise to a 10b–5 claim,[7] and finally, that Cruse has failed to allege reliance on defendant Fishman's conduct.[8] For the reasons which follow, Cruse's allegation of unauthorized trading in violation of Rule 10b–5 survives defendants' Fed.R. Civ.P. 12(b)(6) motion, but is dismissed without prejudice to the filing of a motion for leave to amend pursuant to Fed.R.Civ. P. 9(b), if such motion is made within 20 days of the date of this opinion.

■ Defendants rely initially on the case of *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 473, 97 S.Ct. 1292, 1300, 51 L.Ed. 2d 480 (1977), for their argument that Cruse's claim of unauthorized trading must fall because Cruse fails to allege any affirmative misrepresentations or deception on the part of defendant Fishman. This assertion, however, appears to be founded upon too narrow a reading of the Supreme Court's decision of *Santa Fe.* The Court in *Santa Fe,* expressly permitted an action under Section 10(b) of the Exchange act and Rule 10b–5 based upon a material omission or nondisclosure. *Santa Fe,* 430 U.S. at 474–76, 97 S.Ct. at 1301–02. Plaintiff Cruse has alleged such material omission or nondisclosure by stating that the account was a non-discretionary one and that defendant Fishman traded securities

for the account without first obtaining the requisite authority.

■ Defendants further argue that unauthorized trades disclosed in regular account documentation cannot give rise to a 10b–5 claim. Motion to Dismiss at 14.1. For this proposition, defendants cite *Pross v. Baird Patrick & Co., Inc.,* 585 F.Supp. 1456 (1983–1984 Transfer Binder), Fed.Sec. L.Rep. (CCH) ¶ 99,668 (S.D.N.Y.1984) (Conner, J.). *Pross,* however, is in a significant respect inapposite to the instant situation. In *Pross,* the court dealt with the question of whether a broker had failed to disclose that he was making a market in a stock traded for plaintiff. *Id.* at 97,682, 585 F.Supp. at 1459. The court held that the broker had not engaged in such material omission in violation of Rule 10b–5 as the broker's "market maker" status had indeed been disclosed prior to the settlement date for each transaction. *Id.* at 97,683, 585 F.Supp. at 1459. No analogous disclosure is alleged in either the Complaint or Motion to dismiss at bar. Moreover, plaintiff in *Pross* merely complained that his broker had failed to disclose one selective piece of information, *i.e.* his "market maker" status. Plaintiff Cruse alleges to the contrary that defendant Fishman traded Cruse's account without any prior disclosure or authorization whatsoever. It must also be stressed that even if, *arguendo* defendants are correct in their assertion that a customer's receipt of regular account documentation cures a prior unauthorized trade, Cruse explicitly claims that Fishman himself thought that Cruse would have a difficult time deciphering account statements, and for this reason offered to explain their meaning to plaintiff. Complaint at paragraph 21.

■ Finally, defendants assert that Cruse's claim of unauthorized trading must be dismissed because of a failure to assert reliance on defendant's conduct. Reply Memorandum at page 6. Defendants cite the recent decision of *Bischoff v. B.K. Scott,* No. 85–4677, slip op. at 14 (E.D.N.Y.

---

6. Motion to Dismiss at page 14.

7. *Id.* at 14.1.

8. Reply Memorandum at page 6.

August 29, 1986), which, in contrast to defendant's reliance argument, adheres to an established line of securities cases which has disposed of any requirement of proof of reliance as a prerequisite to recovery in a private action. *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 385, 90 S.Ct. 616, 622, 24 L.Ed.2d 593 (1970); *Affiliated UTE Citizens v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972); *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 495 F.2d 228, 238–39 (2d Cir.1974). Thus, as stated by Justice Blackman in *Affiliated UTE:*

> "... positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision.... This obligation to disclose and this withholding of a material fact establish the requisite element of *causation in fact.*"
> 406 U.S. at 153–54, 92 S.Ct. at 1472 (citations omitted) (emphasis added).

Plaintiff Cruse has fulfilled this requisite element of causation in fact by claiming explicitly in his complaint that due to Fishman's unauthorized trading, *inter alia,* plaintiff has suffered a net loss of over $260,000. Complaint at paragraph 47.

Although the foregoing analysis indicates that Cruse's allegation of unauthorized trading survives defendant's Fed.R. Civ.P. 12(b)(6) motion to dismiss, this does not exhaust our examination as defendants have also moved to dismiss under Fed.R. Civ.P. 9(b), for a failure to plead fraud with the requisite particularity.[9] For the reasons which follow, defendant's Rule 9(b) motion is granted and plaintiff Cruse's claim of unauthorized trading is dismissed without prejudice to the filing of a motion for leave to amend.

Rule 9(b) is a special pleading requirement that contrasts with the general pleading stance adopted by the federal rules. 5 Wright & Miller, Federal Practice and Pro-cedure: Civil § 1297 at 405. In the context of securities fraud cases, Rule 9(b) serves a number of important functions. Firstly, Rule 9(b) provides a defendant with a "fair notice of plaintiff's claim and the grounds upon which it rests." *Ross v. A.H. Robins Co.,* 607 F.2d 545, 557 (2d Cir.1979). Second, the rule protects defendants from the serious harm that may be visited upon their reputations from charges of fraud. *Id.,* at 557. Finally, specifically in a securities context, Rule 9(b) acts as a disincentive to the large numbers of plaintiffs with groundless claims who prosecute charges with the knowledge that there still might be some settlement value at the end of the line. *Id.* These suits are often given the demeaning title of "strike suits."

When pleading fraud, although plaintiff does not have to state detailed evidentiary matter,[10] mere conclusory allegations will not suffice. *Shemtob v. Shearson, Hammill & Co.,* 448 F.2d 442, 444 (2d Cir.1971). *See also Walling v. Beverly Enterprises,* 476 F.2d 393, 397 (9th Cir.1973). Thus, it has been stated that the requirement that a charge of fraud be pleaded with particularity is fulfilled when plaintiff states the time, place, and content of the act or acts in question. *Walling,* 476 F.2d 393, 397. *See also Goldman v. Belden,* 754 F.2d 1059, 1069 (2d Cir.1985); *Troyer v. Karcagi,* 476 F.Supp. 1142, 1149 (S.D.N.Y.1979) (Sweet, J.); and *Todd v. Oppenheimer,* 78 F.R.D. 415, 420 (S.D.N.Y.1978) (Haight, J.).

With the exception of paragraph 35 of plaintiff Cruse's Complaint, where it is stated that on September 30, 1985, defendant sold 29 call options on Kerr McGee Corp. and 12 call options on Pepsico, Inc., Cruse merely offers the conclusory statement that defendant Fishman engaged in unauthorized trading. *See, e.g.,* Complaint at paragraphs 37, 47 and 51. Cruse does not offer any further information concerning transactions alleged to be unautho-

---

**9.** Rule 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity ..." 5 Wright & Miller, Federal Practice and Procedure: Civil § 1296 (1969).

**10.** 2A J. Moore, Federal Practice ¶ 9.03 at 1930 (2d ed. 1972).

rized.[11] Accordingly, this Court will entertain a motion for leave to amend in regard to plaintiff's allegations of unauthorized trading if such motion is made within 20 days of the date of this opinion.

## C. *Churning*

■ Cruse contends that defendant Fishman engaged in "churning" in violation of Rule 10b–5. Complaint at paragraph 45 and 48. Churning arises when a broker abuses his control over a customer's account in order to generate commissions by conducting transactions which are disproportionate to the size and character of the account. *Rush v. Oppenheimer*, 592 F.Supp. 1108, 1112 (S.D.N.Y.1984) (Sweet, J.). In order to state a churning claim under Rule 10b–5, a plaintiff must allege three elements: (1) that the broker or his agent engaged in excessive trading in light of the character of the account; (2) that the broker exercised control over the account; and (3) that the broker acted with fraudulent intent or willful and reckless disregard for the interests of his client. *Mihara v. Dean Witter & Co., Inc.*, 619 F.2d 814, 821 (9th Cir.1980). *See also Rush*, 592 F.Supp. at 1112.

■ Defendants argue that Cruse has failed to adequately plead that the trading in his account for the period in question was excessive. Motion to Dismiss at page 12. More specifically, defendants contend that Cruse should have included in his complaint the numbers and underlying securities transactions that form the basis of Cruse's "turnover ratio,"[12] and moreover, that plaintiff Cruse should have enumerated precisely which trades it is that he contends were excessive. Motion to Dismiss at pages 12–13. Defendant's desire for greater specificity in regard to plaintiff's claim of excessive trading does not find support in the case law. Thus, in *Heller v. L.F. Rothschild, Unterberg, Towbin*, 631 F.Supp. 1422, Fed.Sec.L.Rep. (CCH) ¶ 92,558 at 93,319 (S.D.N.Y.1986) (Haight, J.), it was stated that one may infer excessive trading in an account from an annual turnover rate in excess of recognized limits. And in *Rush*, Judge Sweet held that an annual turnover rate in excess of 6 reflects excessive trading. *Rush*, 592 F.Supp. at 1112.

The pleading policy behind a claim of churning is articulated clearly in the case of *Frota v. Prudential Bache Securities, Inc.*, 639 F.Supp. 1186, Fed.Sec.L.Rep. (CCH) ¶ 92,843 at 94, 104 (S.D.N.Y.1986), wherein it is stressed that it is not necessary for a plaintiff who alleges churning to set out each and every transaction asserted to be excessive. The court in *Frota* explains that this is because a churning claim is not based on a particular trade or group of trades, but the overall amount of trading in a customer's account over a period of time. Plaintiff Cruse has alleged a turnover rate of over 16 for the period at issue. Page 12 n. 15, *supra*. Coupled with an alleged conservative investment objective (*See, e.g.*, Complaint at paragraph 27), and a net loss claimed to be over $260,000 (Complaint at paragraph 47), this turnover rate satisfies the threshold pleading requirement for churning.

■ The second element that a plaintiff must allege in making a churning claim is that defendant exercised control over the account. *Mihara*, 619 F.2d at 821. Although a securities account may be non-discretionary, a broker may still effectively exercise *de facto* control where a customer

---

11. If plaintiff's claim is that all transactions were unauthorized, Rule 9(b) would be satisfied by attaching his account statements to the Complaint. But where it is not clear form the complaint whether plaintiff is alleging that some or all of the transactions were unauthorized plaintiff must plead with greater paticularity.

12. The turnover ratio is a computation frequently used in a churning analysis as one way of determining whether trading in an account over a particular time period was excessive. Turnover ratio is defined as the ratio of the total cost of purchases made for an account over a period of time to the amount invested. *Newburger, Loeb & Co., Inc. v. Gross*, 563 F.2d 1057, 1070 (2d Cir.1977). In other words, a turnover ratio of 10 would mean that over a given period of time, a customer's portfolio was turned over 10 times. *Rush*, 592 F.Supp. at 1112. Plaintiff Cruse alleges a turnover ratio of "greater than sixteen" for the period in question. Complaint at paragraph 48.

places his trust and faith in a broker and routinely follows his broker's advice. *Id.* at 821. *See also Newburger, Loeb & Co. Inc. v. Gross,* 563 F.2d 1057, 1069–70 (2d Cir.1977); *Carras v. Burns,* 516 F.2d 251, 257 (4th Cir.1975); and *Zaretsky v. E.F. Hutton & Co. Inc.,* 509 F.Supp. 68, 74 (S.D.N.Y.1981) (Lowe, J.). Thus, in *Zaretsky,* this court stated that "[f]actors relevant to the element of control include the discretion given the broker-dealer, the age, education, intelligence, and business and investor experience of the client, the relationship between client and broker, and the reliance placed by the customer on his broker." *Zaretsky,* 509 F.Supp. at 74.

Defendants argue against having exercised any control over Cruse's account by stating that the complaint paints Cruse as a successful businessman of long experience who is also a successful stock market investor with a substantial stock portfolio. Motion to Dismiss at page 11. Defendants also assert that such a person should certainly be capable of understanding the standard "Wall Street" type of documentation that Cruse received. *Id.* These arguments are misleading when viewed in the context of Cruse's allegations of control in his complaint. For example, in paragraphs 27 and 42 of the complaint, Cruse states that he has no comprehension of an option, let alone the risks or particular trading strategies involved. In paragraphs 50, 52, and 61, Cruse states that Fishman was able to manipulate him simply because he did not understand the account documentation he was receiving. And finally in paragraphs 29(B) and 32, plaintiff Cruse alleges that defendant Fishman handled Cruse's account as if he had full discretionary authority, despite the fact that in the same paragraphs, Cruse states that the account was non-discretionary. These allegations support a claim of control. As stated in *Zaretsky,* Rule 9(b) does not require plaintiffs to state in their complaint the specific evidence they will introduce to prove the element of control. *Zaretsky,* 509 F.Supp. at 75.

■ The final element that must be pleaded in order to support a churning

claim is that of scienter, that a broker acted with fraudulent intent. In pleading scienter, a plaintiff is not required to adhere to the more rigid requirements of Rule 9(b). *Zaretsky,* 509 F.Supp. at 75. A showing that defendants had knowledge of the falsity of their statements or reckless disregard for the truth is sufficient. The complaint must contain allegations which support an "inference of fraud." *Ross v. A.H. Robins Co.,* 607 F.2d 545, 558 (2d Cir.1979).

Numerous allegations in plaintiff Cruse's complaint support an inference of fraud. Complaint at paragraphs 21, 34, 37, 42, 45, 50, 54, 55, 60 and 61. As plaintiff Cruse has adequately pled the requisite elements of churning, this claim accordingly survives defendant's Fed.R.Civ.P. 12(b)(6) and 9(b) motion to dismiss.

### D. *Unsuitable Trading*

■ The final claim in violation of Rule 10b–5 left to consider is Cruse's allegation that defendant Fishman engaged in unsuitable trading. Such a charge requires a showing that a defendant believed the securities traded were unsuitable in light of the investment objectives and needs of a client, and that defendant nevertheless traded in those securities. *Clark v. John Lamula Investors, Inc.,* 583 F.2d 594, 600 (2d Cir.1978). *See also Zaretsky,* 509 F.Supp. at 75. The scienter required is the same as that required in any action under the Exchange Act: actual knowledge of a fraudulent act or a reckless disregard of the danger that was "so obvious that the defendant must have been aware of it." *Rolf v. Blyth Eastman, Dillon & Co., Inc.,* 570 F.2d 38, 47 (2d Cir.1978), *appeal after remand,* 637 F.2d 77, 81 (2d Cir.1980). *See also Zaretsky,* 509 F.Supp. at 75. For the reasons which follow, plaintiff Cruse's claim of unsuitable trading withstands defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b).

Cruse clearly enunciates his investment objectives in the complaint. In paragraph 27, it is stated that "Defendant Fishman was fully aware of plaintiff's conservative investment objective." And in paragraphs

30(B) and 38, it is stated that despite defendant Fishman's actions to the contrary, Cruse had no intention of engaging in speculative trading. Lastly, in paragraph 24, Cruse states that it was his desire that no stock given as collateral was to be liquidated, and that this was emphatically stated to Fishman. Plaintiff also points to both a particular transaction and Fishman's trading strategy as a whole as being unsuitable in light of the aforementioned investment objectives and explains why. Thus, at paragraphs 34 and 35 of his complaint, Cruse clearly articulates how Fishman's first transaction involved the "very thing [Cruse] most feared and was most emphatic to prevent: the possible liquidation of long-held 'blue-chip' stocks." And, in paragraphs 40–44 of the Complaint, plaintiff Cruse precisely describes Fishman's trading strategy and how it was blatantly unsuitable in light of Cruse's conservative investment objectives. In *Rush*, 592 F.Supp. at 1112, plaintiff's allegation that defendant's undertook high risk investment strategies was significant in supporting a claim of unsuitable trading, along with the allegation that defendants misrepresented the risk of multiple investments.

Defendant's argument as to the reason why Cruse has failed to adequately allege unsuitable trading basically rests on the assertion that Cruse does not point to particular transactions or aspects of defendant Fishman's options trading as being unsuitable. Motion to Dismiss at pages 10–12. In light of the preceding analysis, this argument is without merit. Accordingly, plaintiff Cruse's claim of unsuitable trading survives defendant's motion to dismiss.

### Claim Two: RICO

In Claim II of the Complaint, plaintiff Cruse alleges that "defendants partici-

pated, directly and indirectly, in the conduct of the affairs of Equitable Securities" through a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Cruse incorporates the alleged violations of the federal securities laws set out in Count I of the Complaint, and adds the claims of mail fraud and wire fraud,[13] as the predicate acts. Defendants argue that Cruse's RICO claim must be dismissed because Cruse has not sufficiently alleged a "pattern of racketeering activity" as required by § 1961(5). Further, defendants argue that under §§ 1962(b) and (c), Cruse cannot allege that Equitable Securities is both a "person" and an "enterprise" under the RICO statute. Motion to Dismiss at pages 19–27. For the reasons which follow, the Court finds that plaintiff Cruse has adequately alleged a "pattern of racketeering activity" only in connection with defendant Fishman. Cruse's RICO claim against Equitable Securities must be dismissed.

Section 1962[14] requires that it be alleged that a defendant has engaged in a "pattern of racketeering activity." Section 1961(5) defines this requirement as at least two acts of racketeering activity within a ten-year period. "Racketeering activity" is defined in § 1961(1), and includes "(D) any offense involving ... fraud in the sale of securities ...". What constitutes a "pattern of racketeering activity" has recently been dealt with in the Supreme Court's decision of *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985). The Court in *Sedima* glossed the statutory definition of a pattern of racketeering activity by suggesting that there must be "continuity" and a "relationship" between the alleged acts. Id.[15]

---

**13.** 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud).

**14.** Subsection (c) of § 1962 provides:
It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of

racketeering activity or collection of unlawful debt.

**15.** In what has quickly become a frequently cited footnote, the Court reviewed the legislative underpinnings behind the RICO statute:
The target ... is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be

■ Defendants contend that Cruse has not alleged a pattern of activity because all of the claimed acts of impropriety in the Complaint arise out of one criminal episode, the opening of Cruse's account with Equitable Securities. Motion to Dismiss at pages 24–25. Although allegations of mail and wire fraud may satisfy the "relationship" and "continuity" elements enunciated in *Sedima*,[16] Cruse's allegations of mail fraud and wire fraud, Complaint at paragraphs 78 and 79, may be dismissed as they do not comply with the specificity mandated by Fed.R.Civ.P. 9(b). Rule 9(b) applies to a plaintiff's claim under the RICO statute, just as it would for any other allegations of fraud. *Levine*, 639 F.Supp. 1391, Fed.Sec.L.Re. (CCM) ¶ 92.841 at 94.091. Like the allegations of mail and wire fraud dismissed in *Levine*, Cruse's allegations of mail and wire fraud simply track the language of the mail and wire fraud statutes. Although Cruse alludes to use of the mail and wires, *See, e.g.,* Complaint at paragraphs 51, 56 and 61, at no point does Cruse explicitly set forth that any information was in fact received through the mail or over the wires. As plaintiff has already been granted leave to file a motion to amend, plaintiff may use this opportunity to state his mail and wire fraud claims with the requisite particularity.

■ Cruse's allegations of securities fraud, however, are sufficient to support a "pattern" of criminal activity. Contrary to defendant's assertion that Cruse has only alleged one criminal episode stemming from the establishment of an account with Equitable Securities, two recent cases decided in the Southern District hold that allegations of securities fraud similar to those asserted by Cruse form separate predicate acts which satisfy the "continuity" and "relationship" elements articulated by the Supreme Court in *Sedima* as important in finding a RICO pattern. Thus, in *Levine*, allegations of churning and fraudulent misrepresentation on the part of a broker did not merely constitute one criminal act or episode divided up by plaintiff to satisfy the quantitative demands of the RICO statute, but were deemed adequate to allege the "pattern of racketeering activity" required by § 1961(5). And, in *Rush*, 628 F.Supp. 1188, Fed.Sec.L.Rep. (CCM) ¶ 92,444 at 92.712, allegations of securities fraud similar to those alleged in *Levine* were also found to satisfy the "continuity" and "relationship" elements set out in *Sedima*, and therefore, plaintiff had alleged a pattern of racketeering activity. Cruse has adequately alleged claims of churning and unsuitable trading in Claim I of his Complaint. This impropriety is claimed to have taken place over a period of approximately 6 months,[17] and was related to the same victim, plaintiff Cruse. Thus, the instant situation meets the elements of continuity and relationship articulated by the Supreme Court in *Sedima*, and accordingly, Cruse has alleged the "pattern of racketeering activity" necessary for the survival of a RICO claim. However, for the reasons which follow, such a claim must be dismissed as applied against defendant Equitable Securities.

■ Section 1962(c) draws a distinction between the "person" alleged to have effectuated a pattern of racketeering activity, and the "enterprise" that that person is employed by or associated with. As stated in the case of *Bennett v. United States Trust Co.*, 770 F.2d 308, 315 (2d Cir.1985), *cert. denied*, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986), this distinction reflects the intention of Congress to focus on "the culpable party and recognizes that the enterprise itself is often a passive instru-

effective. It is this factor of *continuity plus relationship* which combines to produce a pattern ...

Significantly, in defining 'pattern' in a later provision of the same bill, Congress was more enlightening: 'criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' *Sedima*, 473 U.S. 479, at 496 n. 14, 105 S.Ct. 3285 n. 14. (emphasis in original).

**16.** *Morgan v. Bank of Waukegan*, 804 F.2d 970, 976 (7th Cir.1986); *Illinois Department of Revenue v. Phillips*, 771 F.2d 312, 313 (7th Cir.1985).

**17.** Complaint at paragraph 46.

ment or victim of the racketeering activity." *See also Levine,* 639 F.Supp. 1391, Fed.Sec.L.Rep. (CCH) ¶ 92,841 at 94,091; and *Rush,* 628 F.Supp. 1188, Fed.Sec.L. Rep. (CCH) ¶ 92,444 at 92,708. Although a corporation or "enterprise" may be considered a "person" under § 1962(a) of the RICO statute, this has been found to be true only when it has been sufficiently alleged that the corporation, along with any individually named defendants, has actively committed the alleged racketeering activity, *United States v. Hartley,* 678 F.2d 961, 988 (11th Cir.1982), *cert. denied,* 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983); *Modern Settings, Inc. v. Prudential–Bache Securities, Inc.,* 629 F.Supp. 860, 863 (S.D.N.Y.1986) (Carter, J.); and *Intre Sport Ltd. v. Kidder, Peabody & Co., Inc.,* 625 F.Supp. 1303, Fed.Sec.L.Rep. (CCH) ¶ 92,439 at 92,677 (S.D.N.Y.1985) (Sweet, J.). The situation that more typically arises, however, is one where a plaintiff attempts to twist or mold a named corporate defendant into the culpable "person" in § 1962(c) by using the common law doctrine of *respondeat superior* or, as in the situation at bar, its statutory counterpart codified in the securities laws in § 20 of the Exchange Act, 15 U.S.C. 78t.

As defendants correctly note in their Motion to Dismiss at page 25, plaintiff Cruse has attempted to mold together the "person" and the "enterprise" in § 1962(c) by claiming that Equitable Securities failed to adequately supervise defendant Fishman under § 20 of the Exchange Act. Complaint at paragraph 68. Such non-action or nonfeasance, however, is not the active participation in racketeering activity required before plaintiff may invoke the RICO statute. *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981); *Bennett,* 770 F.2d at 315; *Levine,* 639 F.Supp. 1391, Fed.Sec.L.Rep. (CCH) § 92,841 at 94,091; and *Rush,* 628 F.Supp. 1188, Fed.Sec.L.Rep. (CCH) ¶ 92,444 at 92,707–09. Plaintiff Cruse cites several paragraphs in his Complaint in an attempt to refute the argument that Equitable Securities was not an active participant in any fraud. Memorandum in Opposition to Motion to Dismiss at page 34. An examination of these designated paragraphs, however, further buttresses the contention that Cruse has not pointed to any active participation by Equitable Securities in the alleged fraudulent actions of defendant Fishman. At best, Cruse has merely alleged that Equitable Securities has abdicated its duty to supervise its employees. Accordingly, the RICO count against Equitable Securities is dismissed.

### Conclusion

The securities fraud claims in Claim I are sustained as to the allegations of churning and unsuitable trading, dismissed without prejudice to the filing of a motion for leave to amend pursuant to Fed.R.Civ.P. 9(b) in regard to the allegations of unauthorized trading, and dismissed pursuant to Fed.R. Civ.P. 12(b)(6) as to the allegations of fraudulent misrepresentation.

The RICO violations alleged in Claim II are sustained only against defendant Fishman. Plaintiff may make a motion for leave to amend pursuant to Fed.R.Civ.P. 9(b) in regard to the allegations of mail and wire fraud. The RICO claim is dismissed pursuant to Fed.R.Civ.P. 12(b)(6) in regard to defendant Equitable Securities.

Plaintiff has alleged two claims based on pendent jurisdiction for common law fraud and violations of Article 23–A of the General Business Law of New York (the Martin Act). These claims are not addressed here as plaintiff has been granted leave to amend in regard to certain federal allegations.

It Is So Ordered.