**Janet BROPHY, Plaintiff-Appellant,**

v.

**Ronald REDIVO, Blyth, Eastman, Dillon & Co., Defendants-Appellees.**

No. 83–1503.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 11, 1983.

Decided Feb. 14, 1984.

Frederick G. Gamble, Gust, Rosenfeld, Divelbess & Henderson, Phoenix, Ariz., for plaintiff-appellant.

W. Charles Thomson, III, Winston & Strawn, Phoenix, Ariz., for defendants-appellees.

Before TANG, and REINHARDT, Circuit Judges, and BURNS,* District Judge.

JAMES M. BURNS, District Judge:

For over thirty years Janet Brophy maintained a securities account at a succession of brokerage houses. In March 1978, when her account executive, Ronald Redivo, became a broker with defendant Blyth, Eastman, Dillon & Co., she transferred her account to that house. During August 1978, while Ms. Brophy was on a month long vacation in Mexico, defendant Redivo executed thirty to thirty-two trades on her account, more than in any prior or subsequent month. Although these trades resulted in at least short term gain for Ms. Brophy and although she made no complaint to Blyth, Eastman or Mr. Redivo for at least six months, Ms. Brophy filed this action against the brokerage firm and her account executive alleging securities violations and breach of contract. She appeals from a grant of summary judgment for defendants on the contract claim and a directed verdict for defendants on the securities claim. We affirm both rulings by the district court.

*The Contract Claim*

Ms. Brophy alleged that Mr. Redivo's buying and selling on her account was without her authorization and was therefore a breach of their brokerage agreement. Even if the August transactions were unauthorized, this claim must fail because Ms. Brophy failed to fulfill her contractual obligation of immediately notifying defend-

---

* The Honorable James M. Burns, United States District Judge for the District of Oregon, sitting by designation.

ants of her objection to the transactions in question. The account agreement she signed when transferring her account to defendant provided:

> Reports of the execution of orders and statements of my account shall be conclusive if not objected to by me in writing. Notice of any such objection shall be sent to you by registered mail immediately.

Upon her return to her Phoenix home, Ms. Brophy did not object to the transactions executed in her absence to either Mr. Redivo or anyone else at Blyth, Eastman, although she contacted Mr. Redivo after she got herself "squared away". Tr. at 28. It was not until March of 1979 that Ms. Brophy took any step to inform defendants of her dissatisfaction with their handling of her account. At that time her attorney wrote to Blyth, Eastman's general counsel complaining in a general way of changes in her portfolio and excessive trading. This letter was not sent by registered mail nor did it specifically refer to the August transactions. We therefore hold that, under Arizona law,[1] Ms. Brophy cannot establish breach of contract because she failed to provide defendants with immediate written notification of her objections to the transactions at issue. *Shapiro v. Bache & Co., Inc.,* 116 Ariz. 325, 569 P.2d 267 (1977).

*The Rule 10b–5 Claim*

■ Ms. Brophy argues that Blyth, Eastman, through Mr. Redivo, traded on her account without authority and by so doing violated section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b–5 of the Securities and Exchange Commission. Because we are reviewing the granting of a directed verdict for the defendants, we view the evidence in the light most favorable to plaintiff and therefore assume that defendants' August trades on Ms. Brophy's account were unauthorized. We must then answer a question previously unaddressed by this court: Does unauthorized trading, without more, consti-

tute a violation of Rule 10b–5? We hold it does not.

The Supreme Court has held that "in the absence of any allegation of 'scienter'—intent to deceive, manipulate, or defraud" on the part of the defendant, there can be no private cause of action for damages under § 10(b) and Rule 10b–5. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). This court has found the scienter element met when a plaintiff shows the defendant acted willfully and recklessly. *Mihara v. Dean Whitter & Co.,* 619 F.2d 814, 821 (9th Cir.1980); *Nelson v. Serwold,* 576 F.2d 1332, 1337 (9th Cir.1978) *cert. denied* 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978).

Plaintiff here asserts she satisfied the scienter element merely by showing unauthorized trading because the trades were executed with deliberation and intent. She points to two cases from other circuits to support her position. Neither case is supportive. In *Nye v. Blyth, Eastman, Dillon & Co.,* 588 F.2d 1189 (8th Cir.1978) the defendants' actions amounted to far more than unauthorized trading. Defendant broker Newham, a novice, misrepresented himself to plaintiff investors as an experienced broke with access to special resources and stock issues, and his misrepresentation was supported by management of defendant Blyth, Eastman. His numerous unauthorized trades resulted in losses in excess of $200,000 and at least some of the unauthorized purchases were of stock the plaintiffs had specifically told Newham they did not want purchased. Once the plaintiffs became aware of the purchases, they immediately ordered the stock sold but defendants delayed in so doing. Further, Newham made misrepresentations concerning certain stock he recommended to plaintiffs. Finally, he refused to execute sell orders given by the plaintiffs thereby causing them additional losses.

In *Mansbach v. Prescott, Ball & Turben,* 598 F.2d 1017 (6th Cir.1979), the plaintiff investor entered the options market in re-

---

1. As a pendent state claim, the breach of contract claim is governed by the law of Arizona where the contract was formed.

liance upon a broker in defendant's employ. Again the case involved a broker refusing to execute an investor's orders and misrepresenting material facts about stock issues and the marketplace.

By contrast, all Ms. Brophy alleges is that while she was out of the country for a month her broker bought and sold on her account. Although the account was non-discretionary—i.e. Mr. Redivo could not execute transactions without Ms. Brophy's prior approval—Ms. Brophy had told him to sell any positions which became dangerous in her absence. None of the unauthorized transactions was made in the face of a specific prohibition by the investor, there were no delays or refusals to sell, no misrepresentations by Mr. Redivo either as to his own expertise or as to the quality of any stock issues and his activities on Ms. Brophy's account resulted in an overall profit for her. Despite the knowledge that defendant Redivo had made unauthorized trades in her absence, Ms. Brophy continued to deal with him and to rely upon his advice; she did not complain about his purchases for at least six months. She cannot show, therefore, the requisite reckless disregard of her best interests or an intent to defraud. The mere fact that defendant Redivo must have acted intentionally—i.e. consciously—while making the unauthorized trades is not sufficient to show scienter.

*Attorney's Fees*

Defendants claim attorney's fees for this appeal pursuant to A.R.S. § 12–341.01 because they prevailed on the pendent state contract claim. We deny this request.

We affirm the rulings of the district court.