**Roger P. GAUDETTE and Jeannine R. Gaudette, Plaintiffs, Appellants,**

v.

**Peter PANOS, et al., Defendants, Appellees.**

No. 88–1133.

United States Court of Appeals, First Circuit.

Heard June 7, 1988.

Decided July 27, 1988.

———

Susan F. Drogin with whom Robert C. Barber and Looney & Grossman, Boston, Mass., were on brief, for plaintiffs, appellants.

John R. Snyder with whom Gerald F. Rath, Deborah Kravitz and Bingham, Dana & Gould, Boston, Mass., were on brief, for defendants, appellees.

Before BOWNES, TORRUELLA and SELYA, Circuit Judges.

TORRUELLA, Circuit Judge.

Roger and Jeannine Gaudette, plaintiffs below, appeal from an order of the district court dismissing their complaint, 650 F.Supp. 912, and from the court's subsequent denials of motions for relief from that order. The merits of the case are, for the nonce, irrelevant. The dismissal was premised, so far as we know, only on the Gaudettes' perceived failure to comply with a discovery order. We find no adequate basis on which to ground such a drastic measure, and reverse.

The Gaudettes brought this suit against Panos, the broker who handled their securities and futures accounts with E.F. Hutton. Basically, they alleged that Panos misrepresented important facts concerning these investments. After the court partially granted some motions to dismiss by the defendants, the Gaudettes' surviving claims rested on three grounds: Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), Section 4o of the Commodity Exchange Act, 7 U.S.C. § 6o and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c).

At the very core of the Gaudettes' claims lies the veracity of Panos' representations to Roger Gaudette during the course of approximately 700 telephone conversations. Roger Gaudette was in the habit of taking contemporaneous notes of these conversations. He subsequently transcribed these notes into an organized chronology and disposed of most of the originals. The defendants contend that this new chronology is a one-sided account of the conversations, and inaccurately depicts Panos' representations to Roger Gaudette.

In addition to keeping notes, Roger taperecorded several of the conversations. These recordings also went into the chronology, and the tapes, ordinary dictaphone tapes, were subsequently reused, the conversations taped over. It was the creation and destruction of these recordings that gave birth to this appeal.

Recording a conversation without disclosing that fact to one's interlocutor is a crime in Massachusetts. Mass.Gen.L. c. 272, § 99. Consequently, during discovery Roger claimed the Fifth Amendment privilege against self-incrimination, and refused to answer any question that might have indicated that he had recorded his conversations with Panos. Upon defendants' motion, however, the court ordered Roger Gaudette to waive his Fifth Amendment rights or face the dismissal of his complaint.[1] Since Gaudette was not present at the hearing when that occurred, plaintiffs' attorney was granted 20 days in which to obtain a decision from her client.

Roger Gaudette, faced with an even less pleasant alternative, decided to disclose the fact that he had recorded several (2 to 4 by his count) of the 700 conversations.[2] Gaudette's attorney, however, neglected to inform the court of this admittedly unhelpful compliance with the court's order. On the twenty-first day after its order, the court entered judgment dismissing the case for failure to comply.

The very next day, Gaudette's attorney asked the court to remove the dismissal on the grounds that Roger Gaudette had complied with the order. E.F. Hutton opposed the motion, arguing not that Gaudette had failed to comply, but that the re-use of the tapes and destruction of the notes constituted the destruction of evidence central to the case. The court denied the motion without a hearing and without an opinion. Another Motion for Reconsideration was filed, and this one, too, was denied without explanation.

On appeal, we evaluate the imposition of sanctions of this nature under the abuse of discretion standard. *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed. 2d 747 (1976); *Spiller v. U.S.V. Laboratories*, 842 F.2d 535, 537 (1st Cir.1988).

The district court certainly acted within its discretion in dismissing the case when, to the best of its knowledge, the time for Gaudette to comply with the order had elapsed without compliance. Indeed, in light of the terms of the order, it is difficult to understand how plaintiffs' counsel intended the court to refrain from dismissing the case without learning of Gaudette's compliance. When the court learned, however, that Gaudette *had* complied within the specified time, the dismissal order should have been reconsidered. At the time, the court knew that Gaudette's only shortcoming had been his failure to inform the court that he had complied with its original discovery order. Dismissal is a sanction completely out of proportion to such a relatively minor failing. *See Enlace Mercantil Internacional, Inc. v. Senior Industries*, 848 F.2d 315, 316–17 (1st Cir. 1988) (detailing restrictions on use of dismissal as a sanction required by drastic nature of that sanction); *United States v. Pole 3172*, 852 F.2d 636, 642 (1st Cir.1988). This is especially true here, where the defendants learned immediately, from Gaudette himself, that discovery could proceed unhindered by Gaudette's Fifth Amendment claims, and were therefore not prejudiced by plaintiffs' failure to inform the court.

The situation is analogous to the one we described in *Cosme Nieves v. Deshler*, 826 F.2d 1 (1st Cir.1987). The court there dismissed the plaintiffs' claim for failure to prosecute when they apparently did nothing for more than five months after an order of this circuit affirming the dismissal of one of their claims and remanding the other. What had happened, however, was that plaintiffs had petitioned the Supreme Court for a writ of certiorari, without applying for a stay of the Court of Appeals judgment or notifying the district court of their action, and were waiting for that petition to be resolved. There we said: "Although plaintiffs' counsel should have informed the court of the petition for certiorari, failure to do so does not warrant a

---

1. This appeal raises no question of the appropriateness of the order that Gaudette waive his rights, and we take no position on the propriety of such an order in this case.

2. This proved to be of little comfort to the defendants, of course, since in the same breath he revealed the destruction of the recordings.

dismissal of their claim once the district court was informed of plaintiffs' effort before the Supreme Court." *Cosme Nieves,* 826 F.2d at 2.

Appellees, however, argue that the order required Gaudette not simply to answer the question whether he had made the tapes, but also to produce the tapes.[3] Since the tapes were not produced, they claim, the order was violated and the dismissal was proper, without regard to the fact that Gaudette answered the questions. Simply because the tapes no longer existed does not excuse their non-production, in defendants' view, because the plaintiffs purposely destroyed them in order to block discovery.

We disagree with this view of the case. In the first place, we do not believe the court's order should be read as compelling production of the tapes, before the court even knew if any tapes existed. Furthermore, if the court did order Gaudette to produce the tapes, it could only have done so under the misimpression that the recordings still existed. Once the court learned they did not, the court would have to impose the sanction for drastically different behavior: no longer a simple refusal to produce materials, but now wilfull destruction of evidence. If the court was willing to leave in place its original order, but on a new basis, it could have given some indication that it was doing so. The court should have given the plaintiffs an opportunity to respond, and it then should have placed the requisite findings in the record.

In *Societe Internationale v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 1095–96, 2 L.Ed.2d 1255 (1958) the Supreme Court remarked that:

> "Rule 37 should not be construed to authorize dismissal of this complaint because of petitioner's noncompliance with a pretrial production order when it has been established that failure to comply has been due to inability, and not to

willfulness, bad faith, or any fault of petitioner."

*Id.* at 212, 78 S.Ct. at 1096.

Absent bad faith or some fault on the part of the Gaudettes, therefore, this dismissal is unwarranted. The district court here made no such findings in relation to the destruction of evidence. All we have in the record is the bare fact of erasure, and a myriad of unsubstantiated allegations by defendants that the plaintiffs acted in bad faith. We do not believe that bad faith is an inescapable, or even the most reasonable, conclusion from the facts, and we refuse to assume it simply on the basis of allegations in defendants' pleadings below. *Cf. Mangual v. General Battery Corp.,* 710 F.2d 15, 18 (1st Cir.1983) ("It may be that the court had good reason for the dismissal, but the record is bereft of any basis for finding that plaintiffs were in default. We can only proceed on the record before us. . . .")

In conclusion, from the record it appears that the only basis considered by the district court in dismissing this action was Roger Gaudette's failure to waive his Fifth Amendment rights as required by the court's discovery order. When the court learned that he had actually complied it should have lifted the dismissal. If it had other grounds to dismiss the case, they are not apparent from the record, so we cannot consider them. Accordingly, we *reverse* and *remand* for further proceedings consistent with this opinion.

---

3. The order itself is less than clear. The court first said "I think Mr. Gaudette has a choice either to produce this material or have the case dismissed." When pressed for clarity as to exactly what motion it was ruling on, it said "I am allowing the motion that says he is going to either give up his Fifth Amendment claim or give up the lawsuit."