Francisco Luis RIVERA,
et al., Plaintiffs,

v.

CLARK MELVIN SECURITIES CORP., et. al., Defendants.

No. Civ. 98–2122(JP).

United States District Court,
D. Puerto Rico.

May 14, 1999.

Maria S. Kortright–Soler, San Juan, P.R., for plaintiff.

Guillermo J. Bobonis, San Juan, P.R., Rachel Brill, Hato Rey, P.R., Jeffrey M. Williams, Hato Rey, P.R., for defendant.

### OPINION AND ORDER

PIERAS, District Judge.

### I. Introduction and Background

The Court has before it Defendants' Joint Defense Motion to Dismiss Due to Plaintiffs' Failure to Plead With Particularity (**docket No. 38**) and Plaintiffs' Opposition to "Joint Defense Motion to Dismiss" (docket No. 42). Plaintiffs Francisco Luis Rivera, Gloria Alcocer de Rivera and their conjugal partnership ("Plaintiffs") filed their Complaint on October 7, 1998, alleging violations of Section 10(b) of the Securities and Exchange Act of 1934. Defendants are Clark Melvin Securities Corporation ("Clark Melvin"), Pershing Division of Donaldson Lufkin & Jenrette Securities Corporation ("Pershing"), and Samuel Ramirez & Company Inc. ("Samuel Ramirez"). On February 5, 1999, Plaintiffs moved to amend their Complaint to account for the voluntary dismissal of Defendant Securities Investors Protection Corporation ("SIPC"), as well as to "set forth a specific and particular pleading as to the fraudulent conduct of Clark Melvin." (Pls.' Mot. For Leave of Ct. to Amend Compl. as Tendered at ¶ 3). The Court granted Plaintiffs' Motion to Amend their Complaint on February 9, 1999.

Plaintiffs allege that they were defrauded by Clark Melvin, through its employees Hernan Pérez and Richard Prann, out of $145,196.00 of their $188,115.00 investment portfolio. Plaintiffs also allege that Defendant Pershing had a duty to detect the forgeries through which Pérez misappropriated their funds, and further, that Defendant Samuel Ramirez is a successor in interest of Clark Melvin and its "alter ego" for the purposes of liability.

The Court met with the parties for an Initial Scheduling Conference on March 17, 1999, and at this Conference, Defendants indicated that they believed Plaintiffs have failed to plead with sufficient particularity to sustain a claim under the Private Securities Litigation Reform Act ("PLSRA"). Defendants also stated that they would pursue a motion to dismiss Plaintiffs' Complaint on this basis, and that

under the PLSRA, any discovery would necessarily be stayed. The Court, nevertheless, went forward with the ISC and scheduled all discovery to be conducted in the instant case, which was subsequently entered in the ISC Order (docket No. 34).

On April 5, 1999, Defendants moved to dismiss Plaintiffs' Amended Complaint for a failure to plead with sufficient particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure and the PLSRA. Defendants also sought a stay off all discovery until the Court ruled on their Motion to Dismiss, and Codefendant Samuel Ramirez subsequently filed an Urgent Motion to stay discovery or for temporary relief of the discovery scheduled in the ISC Order (docket No. 40). After receiving Plaintiffs' motions opposing the motion to dismiss and stay of discovery, on April 16, 1999, the Court orally informed the parties that discovery would be stayed until May 7, 1999, in order to give the Court an opportunity to examine Defendants' Motion to Dismiss.

## II. DISCUSSION

Section 10(b) of the Securities Exchange Act of 1934 prohibits any person, in connection with the purchase or sale of a security, to use or employ any manipulative or deceptive device in contravention of the rules and regulations proscribed by the Securities and Exchange Commission. 15 U.S.C. § 78j(b); *See O'Connor v. R.F. Lafferty & Co., Inc.*, 965 F.2d 893, 897 (10th Cir.1992). Rule 10b–5, promulgated as a result of Section 10(b), provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(1) To employ any device, scheme or artifice to defraud;

(2) To make any untrue statement of material fact necessary in order to make the statements made, in the light of the

circumstances under which they were made, not misleading; or

(3) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5.

■ A plaintiff can bring a claim under Section 10(b) and Rule 10b–5 against a broker or broker-dealer for engaging in trades that are unsuitable to the plaintiff's needs in either the quality and quantity of securities purchased, *see O'Connor* 965 F.2d at 897–98 (differentiating churning or excessive trading claims from claims that the quality of securities purchased was unsuitable); *Lefkowitz v. Smith Barney, Harris Upham & Co.*, 804 F.2d 154, 155 (1st Cir.1986) (discussing elements of unsuitability claim); *Xaphes v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 632 F.Supp. 471, 483 (D.Me.1986) (discussing factors of churning claim), or for unauthorized transactions if accompanied by deception, misrepresentation, or non-disclosure, *see Sec. Investor Protection Corp., v. Vigman*, 803 F.2d 1513, 1519–20 (9th Cir. 1986) (plaintiff alleging unauthorized transactions can state a claim under the Exchange Act); *Arioli v. Prudential–Bache Sec., Inc.*, 792 F.Supp. 1050, 1062 (E.D.Mi.1992) (plaintiff must plead that unauthorized trades constitute a deceptive practice within the meaning of section 10(b) and Rule 10b–5 to state a Rule 10b–5 violation); *Pross v. Baird, Patrick & Co., Inc.*, 585 F.Supp. 1456, 1460–61 (S.D.N.Y. 1984) (collecting cases holding that unauthorized trades alone are not sufficient to state a claim under section 10(b) or Rule 10b–5).

Plaintiffs state claims pursuant to section 10(b) and Rule 10b–5, alleging unauthorized trades and inappropriate trading on their account by employees of Clark Melvin, as well as various misrepresentations related to their account and broker, Pérez. Defendants' Motion to Dismiss examines each paragraph of Plaintiffs' Com-

plaint and asserts that Plaintiffs have failed to plead the requisite fraud and scienter under Federal Rule 9(b) and the PSLRA. The Court will examine Defendants' arguments in turn.

## A. Pleading Pursuant to Rule 9(b) and the PSLRA

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may, in response to an initial pleading, file a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. It is well-settled, however, that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Miranda v. Ponce Fed. Bank*, 948 F.2d 41 (1st Cir. 1991). The Court must accept as true "all well-pleaded factual averments and indulg[e] all reasonable inferences in the plaintiff's favor." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996) (citations omitted). Nevertheless, a Complaint must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988).

When assessing a 12(b)(6) Motion to Dismiss for a securities fraud claim, "two additional considerations bear upon the motion to dismiss: Federal Rule of Civil Procedure 9(b) and the PSLRA." *Lirette v. Shiva Corp.*, 27 F.Supp.2d 268, 274 (D.Mass.1998). Rule 9(b) provides that for complaints alleging "fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). The purposes behind Rule 9(b) are to provide a defendant with notice of a claim, to prevent damage to a defendant's reputation, and to protect defendants from a "strike suit." *See Suna v. Bailey Corp.*, 107 F.3d 64, 68 (1st Cir. 1997) (citing *Shields v. Citytrust Bancorp,*

*Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994); *Lirette*, 27 F.Supp.2d at 274. ) A strike suit is a largely groundless claim brought by a plaintiff who later engages in extensive discovery to induce the defendant to settle rather than to discover relevant evidence of fraud. *See id.; Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 878 (1st Cir.1991).

Under Rule 9(b), a plaintiff bringing a securities claim must "allege 'specific facts that make it reasonable to believe that defendant[s] knew that a statement was materially false of misleading.'" *Suna*, 107 F.3d at 68 (quoting *Serabian v. Amoskeag Bank Shares, Inc.*, 24 F.3d 357, 361 (1st Cir.1994)). "It is well settled that Rule 9(b) requires the plaintiff in a securities fraud case to specify the time, place and content of an alleged false representation." *Romani*, 929 F.2d at 878 (citing *Wayne Investment v. Gulf Oil Corp.*, 739 F.2d 11, 13 (1st Cir.1984)); *see also Suna*, 107 F.3d at 68 (quoting *Serabian*, 24 F.3d at 361) ("the rule requires that the particular 'times, dates, places or other details of [the] alleged fraudulent involvement of the actors be allege.'") Further, this heightened pleading applies even when information regarding the fraud is within the knowledge of the defendant. *Id.*

The PSLRA also imposes heightened pleading requirements on a plaintiff claiming a securities fraud violation. Like Rule 9(b), one of the main goals behind the PSLRA is to prevent "strike suits." *See Lirette*, 27 F.Supp.2d at 274 (The PSLRA "seeks to 'do away with the kind of lawsuit that happens because a companies' [sic] stock drops, a suit is filed, they press discovery, and they move and collect a large settlement from the company, when the suit may be baseless.'") (quoting 104 Cong.Rec. § 19,063 (daily ed. Dec. 21, 1995) (statement of Sen. Feinstein)). Based on the language of the PSLRA, a complaint must set forth "each statement alleged to have been misleading, the reason or reasons why the statement is mis-

leading, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). Thus, the PSLRA further support's this Circuit's "strict .... adherence to Rule 9(b) in the securities context." *Gross v. Summa Four, Inc.,* 93 F.3d 987, 991 (1st Cir.1996); *see also Romani,* 929 F.2d at 878.

 In addition to pleading fraud with particularity, a plaintiff is also required to sufficiently plead scienter, the defendant's "mental state embracing intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Under the PSLRA, a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). As discussed by the district court in *Lirette v. Shiva Corporation,* since the PSLRA's passage, "courts have debated whether Congress intended to codify the Second Circuit's definition of 'strong inference,' or impose a stronger requirement" for scienter. *Lirette,* 27 F.Supp.2d at 281.[1] The *Lirette* Court held that based on the legislative history of the PSLRA and the First Circuit's decision in *Maldonado v. Dominguez,* 137 F.3d 1, 10 (1st Cir.1998), scienter cannot be plead by merely alleging facts that establish a motive to commit fraud and opportunity to do so; rather Congress intended to impose a stricter standard. *Id.* The *Lirette* Court further found that a plaintiff may plead

scienter with circumstantial evidence of conscious or reckless behavior. *See id.* This Court agrees with the rationale and conclusion of the *Lirette* Court, and holds that in order to sufficiently plead scienter under PSLRA, a plaintiff must allege more than a motive and opportunity to commit fraud; however, a plaintiff can accomplish this through circumstantial evidence of conscious or reckless behavior.

Defendants argue that Plaintiffs' Amended Complaint has omitted pertinent facts which require the Court to dismiss the Amended Complaint in its entirety. Specifically, Defendants analyze Plaintiffs Amended Complaint paragraph by paragraph, and point out what they perceive as vague allegations. In opposing Defendants' Motion, Plaintiffs also engage in a paragraph by paragraph analysis of their Amended Complaint, and assert that it has specified both the fraud committed by Clark Melvin through its employees Pérez and Prann, Clark Melvin's liability under *respondeat superior* and the controlling person doctrine, as well as the requisite scienter.

Defendants further point out that in several allegations, Plaintiffs' Complaint does not indicate the speaker or defendant involved in the omission or misstatement. According to Plaintiffs, Defendants' arguments concerning the lack of an identifiable Defendant are without merit because by looking at the context of the allegations, it is clear that the Defendant in each case is Clark Melvin. The Court agrees. Although a claim regarding misrepresenta-

---

1. The Lirette Court points out that since the passage for the PSLRA, some courts have ruled that Congress intended to codify the standard utilized by the Second Circuit, which permits a plaintiff to plead scienter by either alleging facts establishing a motive to commit fraud and an opportunity to do so or alleging facts of circumstantial evidence of either reckless or conscious behavior from which scienter could be inferred. *See Lirette,* 27 F.Supp.2d at 281 (citing *City of Painesville v. First Montauk Fin. Corp.,* 178 F.R.D. 180, 187 (N.D.Oh.1998); *Rehm v. Eagle Fin. Corp.,* 954 F.Supp. 1246, 1252 (N.D.Ill.1997);

*Marksman Partners v. Chantal Pharmaceutical Corp.,* 927 F.Supp. 1297, 1309–10 (C.D.Cal. 1996)). Other courts, however, have ruled that Congress intended to impose a stricter standard than that utilized by the Second Circuit, holding that "motive and opportunity" does not fulfill the scienter requirement under the PSLRA, and disputing whether a plaintiff can utilize circumstantial evidence to infer scienter. *See id.* (citing *Novak v. Kasaks,* 997 F.Supp. 425, 430 (S.D.N.Y.1998); *Norwood Venture Corp. v. Converse Inc.,* 959 F.Supp. 205, 208 (S.D.N.Y.1997)).

tions of material fact must " '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.' " *Suna,* 107 F.3d at 68 (citing *Shields,* 25 F.3d at 1127–28), in examining the disputed paragraphs of the Amended Complaint in context the Court finds that it is clear when "defendant" is used, it refers to Defendant Clark Melvin or Clark Melvin through its employees Pérez and/or Prann.

Regarding Defendants' arguments that the speaker in many instances is not identified, Plaintiffs point out that either the speaker is, in fact, identified in the disputed paragraphs, or the allegation described an omission rather than a misstatement. The Court will examine the alleged misrepresentations and omissions below, examining Defendants' contentions in the context of Plaintiffs' substantive claims of unauthorized trading, unsuitability, and churning.

## B. Churning

■■ " 'Churning' is a shorthand expression for a type of fraudulent conduct in a broker-customer relationship where the broker 'overtrades' a relying customer's account to generate inflated sales commissions." *Craighead v. E.F. Hutton & Company, Inc.,* 899 F.2d 485, 489 (6th Cir.1990) (citing *Armstrong v. McAlpin,* 699 F.2d 79, 90 (2d Cir.1983)). A claim for churning is a claim for fraud, and thus, it must be plead with particularity. *See id.* To state a claim for churning or excessive trading on an account, a plaintiff must allege and ultimately prove that defendants exercised control over the account, traded excessively in light of plaintiff's stated objectives and the nature of the account, and further, that defendants acted with an intent to defraud or willful and reckless disregard for plaintiff's interests. *See Xaphes,* 632 F.Supp. at 483 (citing *Tiernan v. Blyth, Eastman, Dillon & Co.,* 719 F.2d 1 (1st Cir.1983); *Follansbee v.*

*Davis, Skaggs & Co., Inc.,* 681 F.2d 673, 676 (9th Cir.1982)); *see also O'Connor,* 965 F.2d at 898.

■■ Although the First Circuit has not addressed the pleading requirements for a churning claim, other courts have held that:

> [t]o satisfy the requirements of Rule 9(b) in a claim for churning in violation of Rule 10b–5, the complaint .... should identify the securities involved and should contain a statement of facts which is sufficient to, at the very least, permit a rough ascertainment of either the turnover ratio or the percentage of the account value paid in commissions.

*Craighead,* 899 F.2d at 489 (quoting *Polera v. Altorfer, Podesta, Woolard & Co.,* 503 F.Supp. 116, 118 (N.D.Ill.1980)); *see also Rhoades v. Powell,* 644 F.Supp. 645, 665–66 (E.D.Cal.1986). In addition, pleading facts such as whether the broker engaged in "in and out" trading and the number and frequency of trades on an account can be a sufficient basis for a churning claim. *Craighead,* 899 F.2d at 489 (quoting *Costello v. Oppenheimer & Co.,* 711 F.2d 1361, 1369 (7th Cir.1983)).

■■ The turnover ratio " 'is the ratio of the total cost of purchases made for [an] account during a given period of time to the amount invested....' " *Id.* (quoting *Costello,* 711 F.2d at 1369 n. 11). Plaintiffs allege that the annual turnover ratio in December 1995 was 8.76, 5.9 in January 1996, and 6.49 in February 1996. (Am. Compl.¶ 27). Plaintiffs have made further allegations in support of excessive trading on their account, specifically that 91.3% of the securities were maintained in the portfolio for 6 months or less, 71.4% for 4 months or less, and 41.9% for 1 month or less (Am.Compl.¶ 25).

■■ Defendants argue that Plaintiffs have provided no facts to support their claims of gross mismanagement of their accounts or to support their annual turnover ratio. Plaintiffs, however, provide a detailed list of the securities purchased by

Clark Melvin on their account, as well as the amount paid for each transaction during the relevant time period. *See Cruse v. Equitable Sec. of New York*, 678 F.Supp. 1023, 1031 (S.D.N.Y.1987) (churning complaint must set out each disputed transaction because at issue is the overall amount of trading over a period of time). Thus, Defendants can utilize this information to assess Plaintiffs' calculation of the turnover ratio. *See McMahon v. Hibbard Brown & Co., Inc.*, No. 91–6568 1992 WL 70399 at *4 (E.D.Pa. March 31, 1992) ("In pleading the identity of the accounts along with the time frame of trading, plaintiff has provided defendants with information from which they can compute the turnover ratio.") Therefore, the Court rejects Defendant's assertion that Plaintiffs have not sufficiently alleged facts in support of their turnover ratio.

██ A plaintiff stating a claim for churning must also allege that this trading was excessive in light of the plaintiff's stated objectives and the nature of the account. *See O'Connor*, 965 F.2d at 894; *Xaphes*, 632 F.Supp. at 483 (citations omitted). The Amended Complaint states several claims that satisfy this pleading requirement. Plaintiffs allege that Francisco Rivera and Gloria Alcorcer, 78 and 79 years of age respectively, clearly informed Pérez in December 1994, prior to the transfer of their account from Paine Weber to Clark Melvin, that their investment objectives were to produce income and security. (Am.Compl.¶¶ 1, 11). In addition, Pérez knew from his prior experience with Plaintiffs that their only expertise in the area of securities investments was related to their experience with Paine Weber in purchasing secure investments—bonds and GNMA's—and prior to that, certificates of deposit. (Am. Compl.¶ 14). Further, Plaintiffs assert that Plaintiff Rivera suffered a stroke in 1994, and that his health and ability to defend his assets was significantly diminished, and additionally, that Plaintiff Alcocer had never administered the assets nor undertaken any role in the decision making process of the assets deposited. (Am. Compl.¶¶ 14, 15). Defendants knew of these facts, and immediately after Plaintiff Rivera's stroke and subsequent hospitalization and disability, began to trade excessively on Plaintiffs' account. (Am. Compl.¶ 17). The Court finds that contrary to Defendants' assertion, these claims sufficiently allege the time, speaker, and context of Plaintiffs' allegations, demonstrating that the allegedly excessive trades made on the account were not in line with Plaintiffs' stated objectives.

██ Plaintiffs must also plead that their broker exercised control over their account to satisfy the elements of a churning claim. *See O'Connor*, 965 F.2d at 898; *Xaphes*, 632 F.Supp. at 483 (citations omitted). To account for this factor, a plaintiff must allege that the investor's account was discretionary or set out "other facts which would establish the broker's control." *Bogardt v. Shearson Lehman Brothers, Inc.*, No. 91 Civ. 1036(LBS)(NG) 1993 WL 33643 at *4 (S.D.N.Y. Feb. 3, 1993). Even if an account is non-discretionary, a broker may exercise "de facto control" when a customer "places his trust and faith in a broker and routinely follows his broker's advice." *Cruse*, 678 F.Supp. at 1031. Factors considered when assessing control include the broker-dealer's discretion, age, education, intelligence, and business investing experience of the investor, as well as the investor/broker relationship including the investor's reliance on the broker. *Id.* (quoting *Zaretsky v. E.F. Hutton & Co., Inc.*, 509 F.Supp. 68, 74 (S.D.N.Y. 1981)). The Court finds that Plaintiffs' allegations regarding their age and inexperience, reliance on their broker, as well as the fact that Pérez engaged in all of the allegedly excessive trades without informing Plaintiffs or seeking their approval, demonstrates his control over their account.

██ Finally, Plaintiffs must plead scienter in order to avoid dismissal of their churning claims. In order to sufficiently

allege scienter, a plaintiff must show that the broker "purchased the securities with and intent to defraud or with reckless disregard for the investor's interests." *O'Connor* 965 F.2d at 899. As discussed above, because of the PLSRA, a plaintiff must plead more than a motive and opportunity to commit fraud, but can so plead through circumstantial evidence of conscious or reckless behavior. *See Lirette,* 27 F.Supp.2d at 281. Recklessness is defined as "conduct that is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers of sellers that·is either known to the defendant or is so obvious that the actor must have been aware." *O'Connor,* 965 F.2d at 899 (citations and internal quotations omitted).

■ Some Courts have held that churning itself is a deceptive and manipulative device under section 10(b), and thus "the scienter required by section 10(b) .... is implicit in the nature of the conduct." *Armstrong v. McAlpin,* 699 F.2d 79, 91 (2d Cir.1983). Other courts, however, have required a plaintiff to show scienter through the "the amount of commissions charged or from an annual turnover rate in excess of six." *Sheldon Co. Profit Sharing Plan and Trust v. Smith,* 828 F.Supp. 1262, 1273 (W.D.Mi.1993) (citing *Craighead,* 899 F.2d at 489–91). The Court finds that Plaintiffs have provided allegations of Pérez and Clark Melvin's intent to deceive them or, at a minimum, recklessness, through claims of material omissions related to Plaintiff' account. Specifically, Plaintiffs were never informed of nor consented to the allegedly excessive trading, and further, this trading had an annual turnover ratio in excess of 6 and as high as 8.48.

### F. Unsuitability

■ Plaintiffs' Complaint also alleges that Pérez and Clark Melvin engaged in trading that was unsuitable to their investment needs and expressed desires. Specifically, Plaintiffs assert that their highly secure portfolio was converted to a highly speculative one, and that this was accomplished through purchasing securities on margin accounts. (Am.Compl.¶¶ 17, 19). A broker's failure to explain the risks of trading on the margin is actionable under Rule 10b–5. *See Angelastro v. Prudential–Bache Sec., Inc.,* 764 F.2d 939, 943 (3d Cir.1985) (discussing cases).

■ The necessary elements in a claim for unsuitability are similar to those required to plead a churning claim. A plaintiff must plead that the broker recommended or purchased securities unsuitable in light of the investor's objectives, had an intent to defraud or a reckless disregard for the investor's interests, and exercised control over the investor's account. *See O'Connor,* 965 F.2d at 898; *Lefkowitz,* 804 F.2d at 155–56; *McQuesten v. Advest, Inc.,* Civ.A. No. 83–1302–MC–A 1988 WL 125783 at *3 (D.Mass. August 4, 1988).

■ The Court's discussion of Pérez and Clark Melvin's control over Plaintiffs' accounts and Plaintiffs' investment goals in its analysis of the churning claims is relevant to the unsuitability analysis and need not be repeated. The Court, however, notes that Plaintiffs specifically allege that at no time during their relationship with Clark Melvin did they receive information that would explain the nature of margin account or the risk and unsuitability of the transactions made on their account, nor did defendants ever attempt to ascertain their financial condition or ability to sustain losses in margin trading. (Am. Compl.¶¶ 18, 19) Rather, Clark Melvin unilaterally converted a highly secure portfolio into a highly speculative one. (Am. Compl.¶ 17)

Plaintiffs have provided a detailed list of all the trades made on the margin in their Amended Complaint, and have further indicated the changes in their portfolio during the relevant time frame regarding asset backed securities and debt on the margin. (Am.Compl.¶¶ 26, 28, 29, 30). The Court finds that based on its previous

analysis in the churning context and Plaintiffs' additional allegations of unsuitable trades, Plaintiffs have sufficiently pled that Pérez and Clark Melvin controlled their account and disregarded their investment objectives by trading in securities unsuitable to their investment needs. *See Wyman v. Prime Discount Sec.*, 819 F.Supp. 79, 83 (D.Me.1993) (discussing Rule 9(b) in the context of unsuitability claim, stating that fraud was sufficiently alleged when Plaintiffs indicated the challenged stock purchases and complaint stated that "Defendants repeatedly, from 1988–1991, knowingly encouraged Plaintiffs to buy securities that were very high risk, in direct contrast to the conservative investments Plaintiffs allegedly requested."); *Pits, Ltd. v. American Express Bank Int'l.*, 911 F.Supp. 710, 718 (S.D.N.Y.1996) (specific examples of itemized options trading, incompatible with investor's objective, is sufficient to sustain an unsuitability claim under Rules 9(b) and 12(b)(6)).

Plaintiffs have also sufficiently plead scienter in relation to their unsuitability claims. Scienter in this context "may be inferred by finding that the defendant knew or reasonably believed that the securities were unsuited to the investor's needs, misrepresented or failed to disclose the unsuitability of the securities, and proceeded to recommend or purchase the securities anyway." *Brown v. E.F. Hutton Group, Inc.*, 991 F.2d 1020, 1031 (2d Cir. 1993); *Gaudette v. Panos*, 644 F.Supp. 826 (D.Mass.1986), rev'd on other grounds, *Gaudette v. Panos*, 852 F.2d 30 (1st Cir. 1988) (scienter sufficiently pled when complaint alleged that defendants made representations with recklessness, and that margin account was administered without disclosing to investors that broker knew the unsuitability of transactions and effect on interest level of margin account). As discussed above, Plaintiffs have pled that Pérez and Clark Melvin knew of their investment needs, failed to inform them of the risk and nature of a margin account, while nevertheless purchasing a large amount of securities on the margin. These allegations of material omissions are sufficient to satisfy Plaintiffs' scienter requirement.

## G. Unauthorized trading

 Plaintiffs contend that in addition to being unsuitable and excessive, the trades made on their account were also unauthorized. To state a claim for unauthorized trading under Rule 9(b), a plaintiff must provide specific information regarding the alleged unauthorized trades made on the account. *See Cruse v. Equitable Sec. of New York*, 678 F.Supp. 1023, 1029–30 (S.D.N.Y.1987). Plaintiffs have listed all the disputed trades in their Complaint, and further, allege that all such trades were made without their authorization. (Am.Compl.¶¶ 23, 26, 28). These allegations are sufficiently particularized to satisfy Rule 9(b), as they include all the specific trades Plaintiffs claim to be unauthorized.

 Unauthorized trading is not actionable without an accompanying misrepresentation, omission, or non-disclosure. *See Arioli*, 792 F.Supp. at 1062; *Pross*, 585 F.Supp. at 1460–61. The basis of Plaintiffs' claims of unauthorized trading involve omissions on the part of Pérez and Clark Melvin regarding the allegedly excessive trades made on the margin. A broker's failure to inform an investor of transactions made on his or her account is itself a material omission, and, in fact, "no omission could be more material than that" *Village of Arlington Heights v. Poder*, 712 F.Supp. 680, 683 (N.D.Ill.1989) (quoting *Hometown Sav. & Loan Ass'n v. Moseley Sec. Corp.*, 703 F.Supp. 723, 724 (N.D.Ill. 1988); *Arioli v. Prudential–Bache Sec. Inc.*, 792 F.Supp. 1050, 1062 (E.D.Mi.1992) (quoting same)). Thus, Plaintiffs' allegations regarding the unauthorized transactions satisfy the misrepresentation or omission requirement of Rule 10b–5.

 In addition to specifying the disputed transactions and relevant omissions,

a plaintiff must further plead that the trades were "accompanied by an intent to defraud or a willful and reckless disregard of the client's best interests." *Messer v. E.F. Hutton & Co.*, 847 F.2d 673, 679 (11th Cir.1988) (citing *Brophy v. Redivo*, 725 F.2d 1218, 1221 (9th Cir.1984)). The fact that a broker acted "intentionally" or "consciously," however, is not sufficient to show scienter. *See Brophy*, 725 F.2d at 1221. Rather, a plaintiff must allege facts showing an intent to defraud. *See id.* Courts that have addressed the issue of scienter in an unauthorized trading claim have found no scienter when a broker made unauthorized trades in order to protect an account from extreme losses, *see Messer*, 847 F.2d at 679 (broker's acts involved a "reasonable decision well within the bounds of accepted industry practice"), and when the investor did not specifically prohibit a trade, there were no misrepresentations by the broker, and the trades resulted in a profit to the investor, *see Brophy*, 725 F.2d at 1221.

■ The facts in Plaintiffs' case, however, are drastically different than those in the above-described examples. Plaintiffs claim that Pérez and Clark Melvin engaged in unauthorized trades that were both excessive and unsuitable to their investment needs. These trades resulted in a loss of $145,196.00 out of Plaintiffs' $188,-115.00 investment. (Am.Compl.¶ 22). Further, Plaintiffs claim that Pérez and Clark Melvin took advantage of their age and Rivera's declining health condition by commencing in the unauthorized trades immediately after learning of his stroke and declining mental condition. (Am. Compl.¶¶ 17, 23). Thus, the Court finds that Plaintiffs have plead sufficient facts to show that Pérez and Clark Melvin had an intent to defraud Plaintiffs, or at a minimum, acted recklessly in engaging in unauthorized trades.

### D. Misrepresentations

■ The Court must also address the allegations of material misrepresentations and omissions not discussed above and identified by Defendants as the basis for dismissal of Plaintiffs' Amended Complaint. For a misrepresentation or omission to be actionable under section 10(b) or Rule 10b–5, it must be made "in connection with the purchase or sale of a security." Rule 10b–5; *Estate of Soler v. Rodriguez*, 63 F.3d 45, 53 (1st Cir.1995) ("To prevail under Rule 10b–5, a plaintiff must prove, in connection with the purchase or sale of a security, that the defendant, with scienter, falsely represented or omitted to disclose a material fact upon which the plaintiff justifiably relied.") (internal citations and quotations omitted). This requirement has been interpreted "flexibly in order to effect the securities' laws' remedial purposes." *In re American Continental Corp./Lincoln v. Keating*, 49 F.3d 541, 543 (9th Cir.1995): (quoting *Madison Consultants v. FDIC*, 710 F.2d 57, 61 (2d Cir.1983).)

■ To satisfy the "in connection with" element, a plaintiff must show that a defendant "has committed a proscribed act in a transaction of which the pledge of a security is a part." *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 518 (2d Cir.1994) (citing *Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 943 (2d Cir.1984).) This can be accomplished by pleading that the alleged fraud concerned "characteristics and attributes that would induce .... investors to buy or sell the particular [securities]." *Bacon v. Smith Barney Shearson, Inc.*, 938 F.Supp. 98, 102 (D.N.H.1996) (quoting *Ernst & Co. v. Marine Midland Bank, N.A.*, 920 F.Supp. 58, 61 (S.D.N.Y. 1996))

Defendants' contend that various misstatements and omissions were not plead with particularity, but do not attack them as not "in connection with" the sale or purchase of a security. Nevertheless, the Court has discovered such deficient allegations in the Amended Complaint, and must find that such misrepresentations and omissions cannot sustain claims under Rule 10b–5. *See id.* at 101. ("misrepresen-

294

tations or omissions involved in securities transactions, but not pertaining to the securities themselves, cannot form the basis of a Section 10b or Rule 10b–5 claim.")

■ Plaintiffs' Amended Complaint alleges that Pérez made a misrepresentation to Plaintiffs regarding Rivera's 1996 income tax return. (Am.Compl.¶ 37). Plaintiffs claim that Pérez told them that their portfolio was worth $350,000.00 when it was not. *Id.* While this allegation does relate to Plaintiffs' investments, it was not made in connection with the purchase or sale of any securities. Rather, it was made in connection with the filing of Plaintiffs' tax returns, and thus, cannot form the basis of a Rule 10b–5 claim. *See* Bacon, 938 F.Supp. at 102 (allowing damages under Section 10(b) or Rule 10b–5 for improper tax advice would "expand the meaning of 'in connection with' beyond that intended by Congress").

■ The Complaint also alleges various omissions that were not in connection with the sale or purchase of a security. Specifically, Plaintiffs allege that Prann, as Vice President of Clark Melvin, concealed information regarding the fraud committed by Pérez on other Clark Melvin accounts. In a letter dated October 1, 1997, already knowing that Pérez had been decertified as a registered representative of Clark Melvin, Plaintiffs received a letter signed by Prann which misled them into believing that Pérez's departure was a routine matter and implying that he was retiring from the industry. (Am.Compl.¶ 41). Clark Melvin also allegedly omitted Plaintiffs' names from the list of investors who suffered losses at the hands of Pérez and failed to timely report their standing as protected customers under the law. *Id.* Further, Clark Melvin did not give Plaintiffs all the information to which they were entitled, and intentionally failed to timely and adequately respond to their requests for information on their account and for copies of the checks totaling $79,000.00 which were presumably stolen by Pérez. *Id.* Finally, Clark Melvin misled Plaintiffs

and SIPC regarding the agreement with SIPC. *Id.* The Court finds none of these alleged omissions were made in connection with the sale or purchase of a security. Again, all Plaintiffs' allegations relate to their account with Clark Melvin, and in these instances, with the alleged theft perpetuated by Pérez on their account. Nevertheless, there is nothing in the Amended Complaint that would permit these instances to satisfy the "in connection with" requirement of Rule 10b–5.

■ Plaintiffs, however allege that Pérez made misrepresentations prior to the transfer of their account from Paine Weber to Clark Melvin. These claims can be considered "in connection with" the purchase or sale of securities. *See Cruse,* 678 F.Supp. at 1027 (statements made to persuade a potential customer to open up an account satisfy "in connection with" requirement if statements precede the establishment of an "investment contract." Specifically, Plaintiffs' Amended Complaint states that beginning in December of 1994, Pérez convinced Plaintiffs to transfer their account to Defendant Clark Melvin from Paine Weber because he and Richard Prann were leaving Paine Weber for Clark Melvin. (Am.Compl.¶¶ 9, 10)). In December 1994, Pérez further represented to Plaintiffs that they should sign documents purporting to authorize Clark Melvin to receive in transfer the assets in Plaintiffs' Paine Weber portfolio. (Am.Compl.¶ 12) Plaintiffs assert that Clark Melvin opened this account to allow it to engage in trades that were excessive in size and frequency in light of Plaintiffs' financial needs and investment objectives which would generate income for Clark Melvin. (Am. Compl.¶¶ 12, 13, 14). While these alleged representations did not involve the purchase of a specific security, they related to the transfer of Plaintiffs' portfolio for the purpose of purchasing securities through Clark Melvin. Thus, these alleged misrepresentations sufficiently state a cause of action under Rule 10b–5.

### D. Control Liability and Respondeat Superior

The Court must also address Defendants' contention that Plaintiffs have not sufficiently alleged facts that would permit Clark Melvin to be held liable under traditional agency principles or control liability pursuant to Section 20(a) of the Securities Act. Specifically, Defendants argue that there are no allegations that Clark Melvin failed to implement controls ·that would have avoided the theft of Plaintiffs' funds, not any facts that show potential irregularities related to their account. Further, Defendants state that there are no detailed allegations of Clark Melvin's failure to supervise in the Amended Complaint.[2] Plaintiffs rebut these claims by pointing out that their Amended Complaint alleges that Clark Melvin was reckless in the supervision its employee and of Plaintiffs' account, and further, that Pérez was acting within the scope of his employment when he engaged in the unauthorized, excessive, and unsuitable trades.

■ Section 20(a) of the Securities Act, Control Person Liability, provides that:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t. The First Circuit has held that liability under Section 20(a) does not preclude the imposition of vicarious liability under common law. *See In re Atlantic Financial Management, Inc.*, 784 F.2d 29, 32–33 (1st Cir.1986) (discussing circuit split over preclusion issue). Thus, a defendant can be held liable under either Section 20(a) or traditional agency principles. *Id.; see also Dougherty v. Mieczkowski*, 661 F.Supp. 267, 279 (D.Del.1987) (citing *Sharp v. Coopers & Lybrand*, 649 F.2d 175, 181–82 (3d Cir.1981) ("In the context of broker-dealers a stringent duty to supervise employees is imposed, and a broker's employer is liable for violations under traditional agency principles."))

■ In the instant case, Plaintiffs allege that Clark Melvin is liable for the acts of its employees, Pérez and Prann, under a respondeat superior theory. Under respondeat superior or "status based" liability, "a principal .... is liable for tortious misrepresentations of an agent .... even if the agent 'acts entirely for his own purposes, unless the [injured person] .... has notice of this.'" *In re Atlantic Financial Management, Inc.*, 784 F.2d at 32 (citing RESTATEMENT (SECOND) OF AGENCY § 235). The policy behind this rule, requiring a business to bear the losses caused by its employees, is to "stimulate [ ] the watchfulness of the employer in selecting and supervising the agents." *Id.* (quoting with approval W. SEAVDY, HANDBOOK OF THE LAW OF AGENCY § 58 (1964)). The scope of respondeat superior liability "depends on the relationship between the agent, principal, and acts at issue." *Adams v. Hyannis Harborview, Inc.*, 838 F.Supp. 676, 691 (D.Mass.1993). A principal is only liable if the agent is acting within the scope of their authority; however, "it is enough that the agent intended his acts to produce some benefit to himself and to the principal second." *Id.* (quoting *Federal Savings and Loan Ins. Corp. v.*

---

**2.** Plaintiffs' Amended Complaint states "Defendant," rather that specifically Clark Melvin, in various allegations regarding the failure to supervise or implement sufficient controls over its employees. The Court, however, as discussed above, finds that it is clear from the context of these allegations and preceding paragraphs that "Defendant" refers to Clark Melvin or Pérez. *See Gaudette v. Panos*, 644 F.Supp. 826 (D.Mass. 1986), rev'd on other grounds, *Gaudette v. Panos*, 852 F.2d 30 (1st Cir.1988) (complaint sufficient even though it did not differentiate defendants because brokerage house would be secondarily liable; broker was employee at relevant times).

*Shearson–American Express,* 658 F.Supp. 1331, 1338 (D.Puerto Rico 1987)). The Court finds that Plaintiffs have pled sufficient facts alleging respondeat superior liability in their Amended Complaint so as to hold Clark Melvin liable for the acts of its agents. Plaintiffs claim that Pérez and Prann were employees of Clark Melvin that were acting on behalf of Clark Melvin while engaging in trades on their account. (Am.Compl.¶¶ 32, 33, 34). These facts are enough to survive Defendants' Motion to Dismiss.

Plaintiffs have also satisfied their pleading requirements under Section 20(a) for control liability. A broker-dealer "is a controlling person under Section 20(a) with respect to its registered representatives." *Hollinger v. Titan Capital Corp.,* 914 F.2d 1564, 1574 (9th Cir.1990) (discussing the SEC position and purpose behind § 20(a) to protect the investing public from representative who are inadequately supervised or controlled). Thus, in order to state a claim under Section 20(a), a plaintiff must show that the representative himself was not a registered broker-dealer, but that he was a representative employed by a registered broker-dealer. *Id.* Plaintiffs have made such allegations, stating that Pérez, a representative of the broker-dealer Clark Melvin, and further as discussed fully above, that he engaged in fraud related to transactions made on Plaintiffs' account. *See Simon v. American Power Conversion Corp.,* 945 F.Supp. 416, 435 (D.R.I.1996) (plaintiff must show a primary violation of the securities laws and that defendant exercised control) (citing *Sheinkopf v. Stone,* 927 F.2d 1259, 1270–71 (1st Cir.1991).) The Court will not dismiss the Amended Complaint, as requested by Defendants, for failure to allege further specifics regarding the relationship between Pérez and Clark Melvin or any internal procedures at Clark Melvin. *See id.* (issue of whether the alleged controlling persons alleged sufficient control is an "inherently factual question improper for resolution on a motion to dismiss.") At this stage, it is sufficient for Plaintiffs to have alleged the fraud committed by Pérez and that Clark Melvin exercised control over Pérez as a broker-dealer. *See id.; Hollinger,* 914 F.2d at 1574.

## III. Conclusion

The Court finds that under Rule 9(b) and the PSLRA, Plaintiffs have pled with sufficient particularity to sustain claims for churning, unsuitability, and unauthorized trading on their account. Further, the Court notes that the purposes behind both Rule 9(b) and the PSLRA-to prevent "strike suits"—are clearly not applicable to the case at bar. *See Lirette,* 27 F.Supp.2d at 274. Plaintiffs have not brought a complaint rife with conclusory allegations of fraud in order to convince Defendants to agree to an early settlement so as to avoid costly discovery. On the contrary, Plaintiffs have provided Defendants with specific allegations regarding the disputed transactions in support of their claim, giving Defendants ample notice of the exact claims against them. Any information solely in the possession of Defendants at this point in the litigation would certainly assist Plaintiffs in supporting their claims of fraud, and not, as feared by Congress, to induce early settlement through the threat of prolonged litigation. *See Romani,* 929 F.2d at 878.

The Court, however, cannot entertain Plaintiffs claims regarding alleged misrepresentations that were not made in connection with the sale or purchase of a security. Thus, Plaintiffs allegations regarding the misrepresentations and omissions related to their 1996 income tax statements, the letter from Prann about Pérez's departure from Clark Melvin, the documents and information later sought by Plaintiffs, and Clark Melvin's interactions with the relevant authorities and SIPC cannot state a claim under Section 10(b) or Rule 10b–5. The Court, however, finds Plaintiffs' claims of churning, unsuitability, and unauthorized trading to specifically plead fraud and scienter, and that Clark Melvin can be

held liable under a respondeat superior theory or as a control person under Section 20(a). Therefore, Defendants' Motion to Dismiss Plaintiffs' Amended Complaint is hereby **DENIED.** The temporary stay of discovery is lifted, and the parties' **SHALL** continue with the discovery scheduled in the ISC Order (docket No.34). Clark Melvin **SHALL** answer all Plaintiffs' interrogatories and document requests on or before **May 24, 1999,** and the following depositions are hereby **RESCHEDULED** for the dates stated herein: Plaintiffs Rivera and Alcocer on **May 24, 1999 at 9:30 a.m.;** Cesar Montilla on **May 25 and 26, 1999 at 9:30 a.m.,** Richard Prann on **May 27 and 28, 1999 at 9:30 a.m.**

**IT IS SO ORDERED.**